John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Adam L. Olin, State Bar No. 298380
aolin@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:     (213) 788-4340
Facsimile:     (888) 775-0898

Attorneys for Plaintiff
IMDb.com, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMDB.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA HARRIS, in her official capacity as Attorney General of the State of California,<br><br>Defendant. | Case No. 3:16-cv-06535-VC<br><br>**MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:     Hon. Vince Chhabria<br><br>Date:     February 16, 2017<br>Time:     10:00 AM<br>Location:  Courtroom 4 - 17th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLICATION

**TO DEFENDANT AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 16, 2017 in Courtroom 4 of the Honorable Vince Chhabria at the United States District Court for the Northern District of California, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff IMDb.com, Inc. ("IMDb") shall and hereby does move the Court pursuant to Federal Rule of Civil Procedure 65 for **a preliminary injunction** against Defendant Attorney General of California, in her official capacity, and her officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "the Enjoined Individuals") to:

(1) prohibit the enforcement of AB 1687 against IMDb, including, but not limited to, enforcement as a violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

This motion is based on this notice of motion and supporting memorandum of points and authorities; the supporting affidavits of Giancarlo Cairella and Moez M. Kaba; and any other written or oral evidence or argument as may be presented at or before the time this motion is taken under submission by the Court.

Absent a preliminary injunction, IMDb will suffer irreparable harm in the form of a deprivation of its First Amendment and other constitutional and legal rights, as further outlined in IMDb's supporting memorandum of points and authorities.

1

## TABLE OF CONTENTS

2

Page

3 INTRODUCTION .................................................................................................................1

4 BACKGROUND .................................................................................................................3

5 ARGUMENT .....................................................................................................................4

6 I.     It is Highly Likely that IMDb Will Succeed on the Merits ..................................5

7        A.    AB 1687 Violates The First Amendment ..................................................5

8              1.    AB 1687 is a content-based regulation ........................................5

9              2.    AB 1687 fails strict scrutiny .........................................................5

10       B.    AB 1687 Violates the Commerce Clause ..................................................9

11       C.    Section 230 of the CDA Preempts AB 1687 ........................................11

12 II.    IMDb Will Suffer Irreparable Harm Without Injunctive Relief........................13

13 III.   The Balance of Equities and Public Interest Favor IMDb.................................14

14 CONCLUSION...................................................................................................................15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>**Cases**</u>

4

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................................................ 5

5

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003) ..................................................................................... 2, 9, 10

6

7

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) ...................................................................................... 9

8

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ...................................................................................... 4, 13

9

*Arc of Calif. v. Douglas*,
   757 F.3d 975 (9th Cir. 2014) .............................................................................................. 5

10

11

*Backpage.com, LLC v. Cooper*,
   939 F. Supp. 2d 805 (M.D. Tenn. 2013) ..................................................................... 10, 12

12

*Backpage.com, LLC v. McKenna*,
   881 F. Supp. 2d 1262 (W.D. Wash. 2012) ...................................................... 2, 10, 12, 13

13

14

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ............................................................................................................ 6

15

*Berger v. City of Seattle*,
   569 F.3d 1029 (9th Cir. 2009) ............................................................................................ 5

16

17

*Bible Club v. Placentia-Yorba Linda School Dist.*,
   573 F. Supp. 2d 1291 (C.D. Cal. 2008) ........................................................................... 13

18

*Caraccioli v. Facebook, Inc.*,
   167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................................................... 12

19

20

*Carafano v. Metrosplash.com Inc.*,
   339 F.3d 1119 (9th Cir. 2003) .......................................................................................... 12

21

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ............................................................................................................ 5

22

23

*Chicago Police Dep't v. Mosley*,
   408 U.S. 92 (1972) .............................................................................................................. 5

24

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) .............................................................................................. 7

25

26

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975) ............................................................................................................ 8

27

28

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

<u>Page(s)</u>

3  *Dex Media West, Inc. v. City of Seattle*,
     696 F.3d 952 (9th Cir. 2012) ............................................................................ 6
4

*Edgar v. MITE Corp.*,
5      457 U.S. 624 (1982)......................................................................................... 9

6  *Elrod v. Burns*,
     427 U.S. 347 (1976)....................................................................................... 13
7

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
8      521 F.3d 1157 (9th Cir. 2008) ...................................................................... 11

9  *Fed. Trade Comm'n v. LeadClick Media, LLC*,
     838 F.3d 158 (2d Cir. 2016) .......................................................................... 11
10

*Firearms Policy Coal. Second Amendment Def. Comm. v. Harris*,
11     -- F. Supp. 3d --, 2016 WL 3418338 (E.D. Cal. 2016)................................... 14

12 *Healy v. Beer Inst., Inc.*,
     491 U.S. 324 (1989)................................................................................. 9, 10
13

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
14     736 F.3d 1239 (9th Cir. 2013) ...................................................................... 13

15 *Herbert v. Lando*,
     441 U.S. 153 (1979)....................................................................................... 15
16

*IBiz, LLC v. City of Hayward*,
17     962 F. Supp. 2d 1159 (N.D. Cal. 2013) ......................................................... 14

18 *Klayman v. Zuckerberg*,
     753 F.3d 1354 (D.C. Cir. 2014)..................................................................... 11
19

*Klein v. City of San Clemente*,
20     584 F.3d 1196 (9th Cir. 2009) ................................................................... 2, 13

21 *McCullen v. Coakley*,
     134 S. Ct. 2518 (2014)..................................................................................... 5
22

*Morales v. Trans World Airlines, Inc.*,
23     504 U.S. 374 (1992)....................................................................................... 13

24 *Perfect 10, Inc. v. CCBill LLC*,
     488 F.3d 1102 (9th Cir. 2007) ...................................................................... 11
25

*PSINet, Inc. v. Chapman*,
26     362 F.3d 227 (4th Cir. 2004) ........................................................................ 10

27 *R.A.V. v. City of St. Paul*,
     505 U.S. 377, (1992)........................................................................................ 6
28

- iii -

1

<u>TABLE OF AUTHORITIES</u> (cont.)

2

Page(s)

3

*Reed v. Town of Gilbert, Ariz.,*
 135 S. Ct. 2218 (2015)...................................................................... 1, 5, 6, 8

4

5

*Republican Party of Minn. v. White,*
 536 U.S. 765 (2002)................................................................................ 8

6

*Se. Booksellers Ass'n v. McMaster,*
 371 F. Supp. 2d 773 (D.S.C. 2005) ..................................................... 10

7

8

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
 144 F. Supp. 3d 1088 (N.D. Cal. 2015).............................................. 11

9

*Sobini Films, Inc. v. Clear Skies Nev., LLC,*
 2016 WL 5793694 (Cal. Ct. App. Oct. 4, 2016) ............................... 15

10

*Sorrell v. IMS Health Inc.,*
 564 U.S. 552 (2011)............................................................................... 6

11

12

*Thompson v. W. States Med. Ctr.,*
 535 U.S. 357 (2002)............................................................................ 6, 7

13

*United States v. Alvarez,*
 132 S. Ct. 2537 (2012).......................................................................... 6

14

15

*Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.,*
 425 U.S. 748 (1976)............................................................................... 5

16

*Valle Del Sol Inc. v. Whiting,*
 709 F.3d 808 (9th Cir. 2013) ............................................................ 5, 14

17

18

*Video Soft. Dealers Ass'n v. Schwarzenegger,*
 401 F. Supp. 2d 1047 (N.D. Cal. 2005)............................................... 14

19

*Vill. of Schaumburg v. Citizens for a Better Env't,*
 444 U.S. 620 (1980)............................................................................... 7

20

*Wallace v. Jaffree,*
 472 U.S. 38 (1985)................................................................................. 7

21

22

*White House Vigil for ERA Comm. v. Clark,*
 746 F.2d 1518 (D.C. Cir. 1984)............................................................ 9

23

*Winter v. Natural Res. Def. Council, Inc.,*
 558 U.S. 7 (2008)................................................................................... 4

24

25

**<u>Statutes</u>**

26

47 U.S.C. § 230(c)(1) .............................................................................. 11

27

47 U.S.C. § 230(e)(3) .............................................................................. 11

28

MOTION FOR PRELIMINARY INJUNCTION

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

<u>Page(s)</u>

3

47 U.S.C. § 230(f)(2) ................................................................................................................... 11

4

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 4, 13

5

Cal. Civ. Code § 1798.83.5(b)(1) ............................................................................................... 12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY INJUNCTION

1

**<u>INTRODUCTION</u>**

2      Plaintiff IMDb.com, Inc. ("IMDb") respectfully asks this Court to issue a preliminary

3  injunction enjoining defendant Attorney General of California, her authorized agents, and those

4  acting in concert with her from taking any actions to enforce California Assembly Bill 1687 ("AB

5  1687") against IMDb.[1]  AB 1687 amends the California Civil Code to prohibit IMDb from

6  publishing the truthful ages or birthdates of public figures in the entertainment industry.  Rather

7  than properly passing laws designed to address the root problem of age discrimination, the State of

8  California has chosen instead to chill free speech and to undermine access to factual information of

9  public interest.  As such, AB 1687 plainly violates the First Amendment of the U.S. Constitution

10  and cannot be enforced.

11      IMDb seeks to enjoin enforcement of AB 1687, which took effect January 1, 2017.  The

12  elements justifying preliminary injunctive relief are satisfied here:

13      *First*, IMDb is highly likely to succeed on the merits.  AB 1687 is a content-based

14  regulation that singles out specific content—age and birthdate information—for disparate

15  treatment.  Such restrictions are presumptively unconstitutional and must survive "strict scrutiny."

16  *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015).  AB 1687 fails that scrutiny because

17  it is not narrowly tailored and necessary to achieve its stated purpose of preventing age

18  discrimination against struggling actors.  The law is unconstitutionally over-inclusive because it

19  requires IMDb to censor the factual age-related information of producers, directors, casting agents,

20  and myriad other entertainment professionals, many of whom face no realistic risk of age

21  discrimination from the publication of their ages on IMDb.  The law is also unconstitutionally

22  under-inclusive, because it does nothing to restrict the ready availability of the same factual age

23  information from other public sources.  *See id.* at 2231.  AB 1687 targets IMDb in a way that

24  restricts speech without advancing, let alone accomplishing, the law's declared purpose; as such, it

25  violates the First Amendment.

26

27  ────────────────────

28  [1] As of January 3, 2017, Kathleen Alice Kenealy is the Acting Attorney General of California.

1       Beyond its fatal flaws under the First Amendment, AB 1687 violates federal law in other
2   ways.  The law violates the Commerce Clause by purporting to regulate internet conduct that
3   occurs outside the bounds of California.  *See Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir.
4   2003).  If this type of law were allowed to stand, any state could reach beyond its borders and
5   restrict what content can be made available to citizens of that state or other states.  The law is also
6   preempted by the federal Communications Decency Act ("CDA") because AB 1687 subjects IMDb
7   to liability for merely hosting factual speech by third parties.  *See Backpage.com, LLC v. McKenna*,
8   881 F. Supp. 2d 1262 (W.D. Wash. 2012).

9       *Second*, without injunctive relief pending the outcome of this litigation, IMDb faces
10  irreparable harm.  Unless this Court intervenes, IMDb's constitutional rights, including its First
11  Amendment rights, will be violated.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th
12  Cir. 2009) (even temporary restriction of First Amendment rights constitutes irreparable harm).
13  IMDb also faces civil liability under an unconstitutional law and that risk is not hypothetical.  Since
14  AB 1687 was passed, more than 2,300 people have already demanded that IMDb censor factual age
15  information that appears on IMDb.com.  Cairella decl., ¶ 11.  Without relief from this
16  unconstitutional law, IMDb must choose between risking civil liability or engaging in self-
17  censorship.

18      *Third*, the balance of hardships is overwhelmingly in IMDb's favor.  Without injunctive
19  relief, IMDb's free-speech rights, and the public's right to access valuable factual information,
20  will be infringed.  Conversely, the only hardship (if any) to the Attorney General is a slight delay
21  while the Court assesses the statute's constitutionality.

22      *Fourth*, an injunction advances the public interest.  The public has no interest in the
23  enforcement of an unconstitutional statute, let alone one that would curtail the public's own rights
24  to exercise free speech and access information of public interest.

25      IMDb shares the worthy goal of preventing age discrimination.  But AB 1687 does not, as
26  the State and the bill's proponents claim, prohibit or curtail discrimination.  Instead, the law singles
27  out IMDb and forces the removal of just one source of factual public information.  That "enforced
28  silence" is unquestionably censorship in violation of the U.S. Constitution and it cannot stand.

## **BACKGROUND**

IMDb maintains the world's largest online database of information related to films, television programs, and video games.  Cairella decl., ¶ 3.  IMDb's public website, IMDb.com, includes information on cast, production crew, fictional characters, biographies, plot summaries, trivia, and reviews.  *Id.*  IMDb provides a breadth of information on the entertainment industry that is unparalleled by any other source.  *Id.*  Because of IMDb's encyclopedic content, IMDb.com is one of the world's most visited sites.  *Id.* ¶ 4.  As of January 4, 2017, IMDb.com was estimated to be the 54th most visited website in the world according to Alexa.com.  *Id.*  Every month, more than 250 million worldwide unique visitors access IMDb.com to view its pages, including more than six million profiles of cast and crew members, and more than three million title pages for movie, television, and entertainment programs.  *Id.*

Beginning as the hobby of Colin Needham, a British computer programmer, IMDb.com evolved from rudimentary lists of actors to the trusted source of entertainment industry information that it is today.  *Id.* ¶ 5.  From its inception, IMDb has relied on collaborative efforts from around the world to accurately maintain its database.  *Id.*  Similar to Wikipedia, IMDb.com users are able to edit the database in order to keep IMDb.com up to date.  *Id.*  Members of the public add titles to an entertainment industry professional's profile, add iconic quotes from a title, or edit the personal information of entertainment professionals.  *Id.*  IMDb recognizes community sourced information is not perfect, and, for that reason, a "Database Content Team" reviews third-party contributions for accuracy (using a combination of software and/or human review).  *Id.* ¶ 6.

In 2002, IMDb developed a separate service for entertainment industry professionals known as IMDbPro.  *Id.* ¶ 7.  Instead of being a public-facing site like IMDb, IMDbPro is designed to assist industry professionals in finding employment opportunities.  *Id.*  On IMDbPro, casting directors and agents are able to view subscribers' profiles in order to view their resumes, photographs, demo reels, and other information.  *Id.* ¶ 8.  IMDbPro subscribers manage their own profiles and have control over content, *including whether to publicly display their birthdates or ages* on IMDbPro.  *Id.*  Thus, to be clear, IMDbPro already grants subscribers control over whether to list their age-related information on their IMDbPro profiles.  *Id.*

1    In September 2016, in response to aggressive lobbying by the Screen Actors Guild -
2 American Federation of Television and Radio Artists ("SAG-AFTRA"), the largest entertainment
3 union, the California Legislature passed, and Governor Brown signed, AB 1687, which went into
4 effect on January 1, 2017.  The law requires IMDb, upon demand, to remove the birthdates and
5 ages of *any* entertainment industry professionals (including the directors, producers, and casting
6 personnel who make hiring decisions) who subscribe to IMDbPro.  The law was artfully crafted to
7 require IMDb to remove that age information not only from IMDbPro (which subscribers already
8 have the ability to do on their own), *but also from the public IMDb.com site*.  In its lobbying
9 efforts, SAG-AFTRA did not hide the fact that IMDb was its target.  The legislative history of AB
10 1687 confirms that it is aimed specifically at IMDb.  *See* Kaba decl., Ex. 6, at 4-6.

11    AB 1687 was passed against a backdrop of a focus by the Attorney General on privacy
12 violations.  In 2012, the Attorney General created the Privacy Enforcement and Protection Unit,
13 whose stated goal was "protecting consumer and individual privacy through civil prosecution of
14 state and federal privacy laws."  *Id.*, Ex. 2, at 1.  The Attorney General has declared enforcing state
15 privacy laws one of the office's "top priorities."  *Id.*  IMDb reasonably believes the Attorney
16 General will seek both monetary penalties and injunctive relief against IMDb by filing an action for
17 violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.  SAG-
18 AFTRA, the bill's proponent, has stated that it will support the Attorney General's efforts to
19 enforce and defend AB 1687.  *Id.*, Ex. 3, at 3.

20    ## ARGUMENT

21    "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on
22 the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
23 balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking
24 Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural
25 Res. Def. Council, Inc.*, 558 U.S. 7, 20 (2008)).  The Ninth Circuit also engages in a "sliding scale
26 approach," such that "serious questions going to the merits and a balance of hardships that tips
27 sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the
28 plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

public interest." *Arc of Calif. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)) (internal quotations omitted). IMDb easily meets both standards.

**I.    It is Highly Likely that IMDb Will Succeed on the Merits.**

   **A.    AB 1687 Violates The First Amendment.**

      *1.    AB 1687 is a content-based regulation.*

   "A regulation is content-based if . . . by its very terms, [it] singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc). Said another way, a statute is content-based if authorities must "examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (internal quotation marks omitted); *see also Chicago Police Dep't v. Mosley*, 408 U.S. 92, 94-95 (1972) (law was content-based because it allowed picketing for one purpose but limited it for others); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 819 (9th Cir. 2013) (law was content-based because it prohibited drivers from impeding traffic for a particular purpose); *Berger*, 569 F.3d at 1051 (law was content-based because it prohibited street performers from soliciting money).

   It cannot reasonably be disputed that AB 1687 is a content-based regulation.  On its face, the law "singles out" only a particular type of subject matter to be regulated: "date of birth or age information."  The only way to determine whether IMDb violates AB 1687 is to examine the content of the information IMDb publishes.

      *2.    AB 1687 fails strict scrutiny.*

   Content-based regulations of non-commercial speech are subject to strict scrutiny.  *Town of Gilbert*, 135 S. Ct. at 2226.[2]  To survive judicial review, the government bears the burden of

---

[2]  AB 1687 does not target "commercial speech."  Commercial speech is speech that does "no more than propose a commercial transaction," *Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976), or speech that is "related solely to the economic interests of the speaker and its audience," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  Factual information unconnected to a business transaction or advertisement is not
(Continued...)

1   proving that the regulation is "narrowly tailored to serve compelling state interests." *Id.*  Under this

2   searching review, content-based regulations are "presumptively invalid." *R.A.V. v. City of St. Paul*,

3   505 U.S. 377, 382 (1992); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) ("In the

4   ordinary case it is all but dispositive to conclude that a law is content-based . . . .").  To be narrowly

5   tailored and overcome the presumption of invalidity, a law must be "actually necessary" to achieve

6   its goal. *United States v. Alvarez*, 132 S. Ct. 2537, 2549 (2012).  A law may not be over-inclusive,

7   sweeping too broadly by proscribing speech that does not affect the law's stated purpose, or under-

8   inclusive, by failing to limit speech that would otherwise undermine the law's stated purpose.

9          Combating age discrimination is a compelling state interest.  But AB 1687 fails strict

10  scrutiny because it is not narrowly tailored to accomplish that goal:

11         *First,* even a narrowly tailored statute must be "actually necessary" to achieve its stated

12  purpose. *Alvarez*, 132 S. Ct. at 2549.  The Attorney General cannot show that AB 1687, as

13  opposed to actual enforcement of discrimination laws, is *necessary* to combat age discrimination.

14  "The normal method of deterring unlawful conduct is to impose an appropriate punishment on the

15  person who engages in it," not to suppress truthful information. *Bartnicki v. Vopper*, 532 U.S. 514,

16  529-30 (2001) ("[I]t would be quite remarkable to hold that speech by a law-abiding possessor of

17  information can be suppressed in order to deter conduct by a non-law-abiding third party.");

18  *Sorrell*, 564 U.S. at 577 ("Those who seek to censor or burden free expression often assert that

19  disfavored speech has adverse effects.  But the fear that people would make bad decisions if given

20  truthful information cannot justify content-based burdens on speech.") (internal quotation marks

21  omitted).

22

23  _____

24  commercial speech. *See Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 956-57 (9th Cir.
    2012) ("telephone listings and community information" in telephone directories were not
25  commercial speech).  Factual age and birthdate information on IMDb.com, unconnected to any
    commercial transaction or advertisements, is not commercial speech by any definition.  But even if
26  such factual information were deemed commercial speech, AB 1687 would still be unconstitutional
    because it does not "directly advance[] a substantial government interest," *Sorrell v. IMS Health*
27  *Inc.*, 564 U.S. 552, 571-72 (2011), and is "more extensive than necessary to serve that interest,"
28  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002).

1   Individual actors, as well as the Attorney General, already may seek redress in court against

2   those who engage in unlawful age discrimination.  Even if it were *easier* to prevent discrimination

3   by quixotically attempting to scrub the internet of all age-related information (a premise plainly

4   false on its face), that approach is unquestionably not *necessary* and indeed not even effective.  On

5   that basis alone, AB 1687 is therefore unconstitutional.  *See Vill. of Schaumburg v. Citizens for a*

6   *Better Env't*, 444 U.S. 620, 637 (1980) ("The Village's legitimate interest . . . can be better served

7   by measures less intrusive than a direct prohibition on [speech].  Fraudulent misrepresentations can

8   be prohibited and the penal laws used to punish such conduct directly."); *Thompson v. W. States*

9   *Med. Ctr.*, 535 U.S. 357, 373 (2002) (speech restrictions must be "a necessary as opposed to merely

10  convenient means of achieving [the government's] interests").

11      *Second,* rather than narrowly regulating speech to achieve its goal, AB 1687 is irretrievably

12  over-inclusive.  To survive strict scrutiny, content-based statutes must not "regulate[] significantly

13  more speech than is necessary to achieve the [government's] purpose."  *Comite de Jornaleros de*

14  *Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011) (en banc).  AB 1687's

15  author, Majority Leader Calderon, stated that the law was enacted to protect "lesser known actors

16  and actresses competing for smaller roles," because "age information for Hollywood's biggest stars

17  is readily available from other online sources."  Kaba decl., Ex. 4, at 3.  But the law in fact allows

18  *all* IMDbPro subscribers to demand that IMDb remove their ages from public view.  These

19  subscribers include all manner of entertainment industry professionals, including directors,

20  producers, casting agents, and other similar people involved in hiring and casting decisions.  Even

21  the bill's proponents did not contend that most of these individuals face the same risk of age

22  discrimination faced by some on-screen actors, yet all are swept into the law's overbroad ambit.[3]

23

24  ────────────────

    [3]  In support of AB 1687, California also cited the "bona fide occupational qualification" defense to

25  age discrimination suits by actors.  Kaba decl., Ex. 6, at 4; *id.*, Ex. 7, at 4.  AB 1687's legislative
    history is replete with references to protecting *actors* (in particular, "up-and-coming" actors) from

26  age discrimination.  *Id.*, Ex. 5, at 3; *see also Wallace v. Jaffree*, 472 U.S. 38, 57-59 (1985)
    (considering statements by bill's sponsor to conclude a statute was unconstitutional).  Non-actors

27  do not face that issue, yet the law makes no distinction between them and actors.

28

1  Moreover, the law applies with equal force to well-established actors who are not "competing for

2  smaller roles," whose ages are well-known, and who do not face the same realistic or material risks

3  of age discrimination that the law claims to address.[4]  *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469,

4  494-95 (1975) ("interests in privacy fade when the information involved already appears on the

5  public record").  Thus, AB 1687 is unconstitutionally over-inclusive in its reach.

6       *Third,* AB 1687 is under-inclusive (and therefore not narrowly tailored) because it allows

7  all speakers other than IMDb to continue to publish the same factual information that allegedly

8  causes the discrimination the law purportedly is designed to prevent.  AB 1687 does nothing to

9  address the myriad other sources of actors' ages and birthdates.  Those sources, including

10  Wikipedia, Google, Microsoft (Bing), Apple (Siri), Facebook fan pages, entertainment magazines,

11  newspapers, and many other sources, are widely and readily accessible.  *See* Cairella decl., ¶ 10.

12  AB 1687's complete failure to address the publication of actors' ages by other sources is, standing

13  alone, fatal under strict scrutiny.  *See Republican Party of Minn. v. White*, 536 U.S. 765, 780

14  (2002) ("[A] law cannot be regarded as protecting an interest of the highest order, and thus as

15  justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly

16  vital interest unprohibited.") (internal quotation marks and citation omitted).

17       *Town of Gilbert* is analogous.  The town passed a statute that placed restrictions on the use

18  of directional signs, for the stated purpose of "beautify[ing] the Town."  *Town of Gilbert*, 135 S. Ct.

19  at 2231.  The statute, however, exempted numerous other categories of signs, which would have

20  had an equal impact on the town's aesthetics.  *Id.*  The Court held that the law was "hopelessly

21  underinclusive" because "the town cannot claim that placing strict limits on temporary directional

22  signs is necessary to beautify the Town while at the same time allowing unlimited numbers of other

23  types of signs that create the same problem."  *Id.*  AB 1687 is even more egregious: it silences a

24  single speaker while leaving all others free to publish *the very same information* that California and

25  

26  [4]  In fact, since AB 1687 was passed, IMDb has received age take-down requests from many
   established actors and other talent in the film and television industries.  Among the more than 2,300
27  requesters, 81 are Oscar, Golden Globe, or Emmy nominees, including ten Oscar winners.  Cairella
28  decl., ¶ 11.

1  the bill's proponents believe fosters age discrimination.  Moreover, the law does nothing to

2  penalize the actual misconduct it purports to target, *i.e.*, age discrimination.  The State cannot

3  impose "a serious loss to speech" for a "disproportionately small governmental gain."  *White*

4  *House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1544 (D.C. Cir. 1984).

5  **B.    AB 1687 Violates the Commerce Clause.**

6  The "Commerce Clause . . . precludes the application of a state statute to commerce that

7  takes place wholly outside of the State's borders, whether or not the commerce has effects within

8  the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982); *see also Healy v. Beer Inst., Inc.*,

9  491 U.S. 324, 332 (1989).  This prohibition applies to internet regulation, even where the conduct

10  "does not quite occur wholly outside [a state's] borders" due to the internet's unique character.

11  *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) (internal quotation marks and

12  citation omitted).  "Because the internet does not recognize geographic boundaries, it is difficult, if

13  not impossible, for a state to regulate internet activities without 'project[ing] its legislation into

14  other States.'" *Id.*; *see also Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 169 (S.D.N.Y. 1997)

15  (states have authority to regulate within their geographic boundaries, but "geography . . . is a

16  virtually meaningless construct on the Internet").  Accordingly, courts routinely find statutes that

17  seek to regulate the internet to be unconstitutional.  And for good reason; under our federalist

18  system, no state may regulate the speech available to residents of any other state (let alone every

19  other state, as AB 1687 does).

20  The Second Circuit's decision in *Dean* is particularly instructive.  Vermont enacted a statute

21  that penalized the distribution of certain content on the internet.  The Second Circuit concluded that

22  the law was a "*per se* violation of the dormant Commerce Clause" because its practical effect was

23  to "project[] its legislation into other States, and *directly regulate[]* commerce therein."  342 F.3d

24  at 104 (quotation omitted).  The internet's omnipresence means that a "person outside Vermont

25  who posts information on a website or on an electronic discussion group cannot prevent people in

26  Vermont from accessing the material." *Id.* at 103.  Thus, "those outside Vermont must comply

27  with [the statute] or risk prosecution by Vermont." *Id.*  AB 1687 creates the same risks for IMDb.

28  It is technologically unfeasible for IMDb to prevent California residents from viewing age and

1  birthdate information on IMDb.com, while simultaneously allowing this information to be

2  accessible outside of California.  Cairella decl., ¶ 12.  Consequently, for IMDb to comply with AB

3  1687 and avoid liability in California, IMDb would be forced to censor factual age and birthdate

4  information from IMDb.com entirely.  *Id.*  That will preclude residents of all other 49 states (and

5  those outside the United States) from accessing valuable public information because of the

6  improper extraterritorial reach of California's law.

7      Other courts have relied on the same principle to invalidate state laws that purport to

8  regulate the internet.  *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1285-86 (W.D.

9  Wash. 2012) (invalidating, on Commerce Clause grounds, statute imposing liability on

10  advertisements that "may occur entirely outside of the state and no act need take place in the state

11  of Washington to trigger liability under the statute"); *Se. Booksellers Ass'n v. McMaster*, 371 F.

12  Supp. 2d 773, 787 (D.S.C. 2005) (striking down similar law to *Dean* where "it is difficult to see

13  how a blanket regulation of Internet material . . . can be construed to have only a local effect")

14  (quoting *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004)); *Backpage.com, LLC v.

15  Cooper*, 939 F. Supp. 2d 805, 844 (M.D. Tenn. 2013) ("[T]he message from these cases is that a

16  legislature must make the narrow geographic scope of its laws explicit to stay within the confines

17  of the Dormant Commerce Clause when regulating Internet activity.").

18      AB 1687 is not limited to conduct that has a sufficient nexus to California.  The bill would

19  instead treat the entire internet as a subject for California to regulate.  Thus, for example, IMDb, a

20  Delaware corporation with its offices in Seattle, risks liability under AB 1687 if it refuses to censor

21  itself when a California actor requests the removal of his age from IMDb.com after the information

22  is contributed by an IMDb.com user in Germany.  Because the internet is accessible without regard

23  to geography, IMDb would be forced to somehow modify its content in order to comply with each

24  state's regulatory regime.  *See PSINet, Inc.*, 362 F.3d at 240 ("The content of the Internet is

25  analogous to the content of the night sky.  One state simply cannot block a constellation from the

26  view of its own citizens without blocking or affecting the view of the citizens of other states.").

27  The Commerce Clause rightly "protects against inconsistent legislation arising from the projection

28  of one state regulatory regime into the jurisdiction of another State."  *Healy*, 491 U.S. at 337.

1   Concluding otherwise would subject IMDb to the whims of every state's inconsistent and

2   unconstitutional legislation, forcing IMDb to attempt to develop a patchwork of versions of its site

3   only available in certain jurisdictions.  The Commerce Clause forbids such a result, rendering AB

4   1687 unconstitutional.

5       **C.      Section 230 of the CDA Preempts AB 1687.**

6       In addition to being unconstitutional, AB 1687 violates the CDA by exposing IMDb to

7   liability when its users edit a subscriber's IMDb.com profile.  The CDA provides that "[n]o

8   provider or user of an interactive computer service shall be treated as the publisher or speaker of

9   any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The

10  CDA also expressly preempts any state law to the contrary, providing that "[n]o cause of action

11  may be brought and no liability may be imposed under any State or local law that is inconsistent

12  with this section."  *Id.* § 230(e)(3).  "The majority of federal circuits have interpreted the CDA to

13  establish broad federal immunity to any cause of action that would make service providers liable

14  for information originating with a third-party user of the service."  *Perfect 10, Inc. v. CCBill LLC*,

15  488 F.3d 1102, 1108 (9th Cir. 2007) (internal quotation marks omitted).  Courts have consistently

16  "recognized that section 230 immunity is broad."  *Fed. Trade Comm'n v. LeadClick Media, LLC*,

17  838 F.3d 158, 173 (2d Cir. 2016).

18      The CDA bars liability where: (i) the defendant is a provider of "an interactive computer

19  service;" (ii) the speech serving as the basis for liability is "information provided by another

20  information content provider;" and (iii) the plaintiff seeks to hold the defendant liable as the

21  "publisher or speaker" of that information.  *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F.

22  Supp. 3d 1088, 1092-93 (N.D. Cal. 2015) (citing *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357

23  (D.C. Cir. 2014)).  The liability imposed by AB 1687 clearly meets all three requirements:

24      *First*, IMDb is an "interactive computer service" because it provides information to

25  "multiple users" by offering "computer access . . . to a computer server."  47 U.S.C. § 230(f)(2).

26  "[T]he most common interactive computer services are websites."  *Fair Housing Council of San*

27  *Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (en banc).

28

1    *Second,* AB 1687 punishes IMDb for hosting information provided by other content

2    providers.  IMDb.com *users* (i.e., third parties) upload and provide age and birthdate information to

3    IMDb.com.  Cairella decl., ¶ 14.  The CDA prevents laws like AB 1687 that impose liability on

4    IMDb for hosting the factual content provided by third-party users.  This immunity applies

5    regardless of the fact that the third-party contributions are reviewed for accuracy.  *See, e.g.*,

6    *Cooper*, 939 F. Supp. 2d at 825 (holding that a statute was likely preempted by the CDA where the

7    website "voluntarily engage[d] in an automated screening and 'two-tier manual (human) review'"

8    of the relevant postings).

9    *Third,* for the same reasons, AB 1687 punishes IMDb as the "publisher or speaker" of age

10   and birthdate information on IMDb.com.  Cal. Civ. Code § 1798.83.5(b)(1).  If a subscriber

11   demands the removal of age information, IMDb becomes immediately subject to liability for

12   publishing all such information in the future, even when it originates with third parties.  The law

13   would impermissibly impose liability on IMDb for its users' profile edits.  Under the CDA, courts

14   routinely reject liability predicated on a third party's posting of information on a website, such as

15   IMDb.  *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003) (affirming

16   dismissal on CDA grounds of suit against matchmaking site where third parties posted plaintiff's

17   personal information); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016)

18   (dismissing on CDA grounds suit against social networking website on which a third party posted a

19   defamatory profile).

20   AB 1687 also treats IMDb as a "publisher" because the law's practical effect is to require

21   IMDb to subject all content originating with third parties to review.  "[B]y imposing liability on

22   online service providers who do not pre-screen content or who 'know' that third party content may

23   violate state law, the statute drastically shifts the unique balance that Congress created with respect

24   to the liability of online service providers that host third party content."  *McKenna*, 881 F. Supp. 2d

25   at 1274 (sustaining advertising board's CDA challenge to law criminalizing the advertising of

26   certain material originating with third parties).  On average, IMDb users make approximately

27   100,000 submissions to IMDb's database each week.  Cairella decl., ¶ 14.  Requiring IMDb to pre-

28   screen all third-party activity on its site to comply with AB 1687 would "drastically shift[] the

1 unique balance that Congress created." *McKenna*, 881 F. Supp. 2d at 1274.  As such, AB 1687 is

2 inconsistent with the CDA and preempted under the Supremacy Clause.

3 **II.    IMDb Will Suffer Irreparable Harm Without Injunctive Relief.**

4     IMDb reasonably believes that there is a concrete risk that the Attorney General will bring

5 suit under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

6 to enforce AB 1687 against IMDb before the resolution of this action.  The Attorney General

7 previously announced a newfound emphasis on enforcing privacy laws, such as AB 1687,

8 describing them as one of the office's "top priorities."  Kaba decl., Ex. 2, at 1.  SAG-AFTRA, AB

9 1687's sponsor, has similarly voiced its intention to "fight alongside the California Attorney

10 General to defend AB 1687."  *Id.*, Ex. 3, at 3.  Enforcement of AB 1687 would cause IMDb

11 irreparable harm in at least two significant ways.

12     *First*, IMDb will suffer irreparable harm without injunctive relief because AB 1687 directly

13 infringes IMDb's First Amendment rights.  The Ninth Circuit "and the Supreme Court have

14 repeatedly held that the loss of First Amendment freedoms, for even minimal periods of time,

15 unquestionably constitutes irreparable injury."  *Klein v. City of San Clemente*, 584 F.3d 1196,

16 1207-08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "In First Amendment

17 cases, the presumption in favor of irreparable harm is particularly strong."  *Bible Club v. Placentia-*

18 *Yorba Linda School Dist.*, 573 F. Supp. 2d 1291, 1300 (C.D. Cal. 2008).

19     *Second*, IMDb will suffer irreparable harm if it is required to submit to and comply with an

20 unconstitutional law.  *See Am. Trucking Assocs., Inc.*, 559 F.3d at 1058-59 (finding irreparable

21 harm where movant would "be required to adhere to the various unconstitutional provisions");

22 *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (irreparable injury present where

23 plaintiffs faced a "Hobson's choice" of "expos[ing] themselves to potentially huge liability" under

24 a preempted law or "suffer[ing] the injury of obeying" the law).[5]

25

26 ───────────────

[5]  IMDb will also suffer irreparable harm by losing customer goodwill.  AB 1687 uniquely

27 threatens IMDb's position by intentionally diminishing the comprehensiveness of its database, leading users to seek out other, more complete sources.  *See Herb Reed Enters., LLC v. Florida*

28                                                                                   (Continued...)

**III.     The Balance of Equities and Public Interest Favor IMDb.**

The balance of equities is sharply in IMDb's favor.  Beyond the deprivation of its constitutional rights, IMDb faces potential civil penalties and liability.  Cairella decl., ¶ 13.  If the law is allowed to be enforced, IMDb must also implement significant changes to its systems in order to police factual information contributed by third parties on IMDb profiles.  *Id.* ¶ 14.  Compliance with the law would impose substantial costs (both monetary and human resources) on IMDb.  *Id.*; *see also Video Soft. Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034, 1047-48 (N.D. Cal. 2005) (finding hardships tipped in favor of movant where compliance with statute would "involve considerable expense to implement").  These hardships far outweigh any possible impact on defendant, as enjoining AB 1687 pending the outcome of this litigation will only slightly delay the statute's enforcement (if it is ultimately found constitutional).  *See id.* ("If the court does preliminarily enjoin enforcement of the Act, the defendants will merely be delayed a short time in implementing the Act, if it is ultimately found to be constitutional.").

The issuance of injunctive relief is similarly in the public interest because of the same basic First Amendment principles: the public is not served by the intentional suppression of factually accurate speech.  The "public has no interest in enforcing unconstitutional laws."  *Firearms Policy Coal. Second Amendment Def. Comm. v. Harris*, -- F. Supp. 3d --, 2016 WL 3418338, at *5 (E.D. Cal. 2016).  On the contrary, the "public interest in upholding First Amendment principles is great."  *IBiz, LLC v. City of Hayward*, 962 F. Supp. 2d 1159, 1170 (N.D. Cal. 2013).

AB 1687 not only threatens IMDb's First Amendment rights, but will end the public's ability to exercise its own First Amendment rights on and through IMDb.com.  *See Valle del Sol Inc.*, 709 F.3d at 828-29 ("[T]he court correctly found that an injunction is in the public interest because the [regulation], if enforced, would infringe the First Amendment rights of many persons who are not parties to this lawsuit.").  Without injunctive relief, IMDb will be forced to censor its

---

*Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm.").  Because AB 1687 functionally limits *only* IMDb's speech, competitors may fill the gap created by the State's censorship of IMDb's information.

1  users and the information they share on IMDb.com.  There is a significant "public interest in a free

2  flow" of information, *Herbert v. Lando*, 441 U.S. 153, 180 (1979), which will be interrupted by AB

3  1687.  That is especially true here because courts have already concluded that information hosted

4  on IMDb.com is a matter of public interest.  *See, e.g.*, *Sobini Films, Inc. v. Clear Skies Nev., LLC*,

5  2016 WL 5793694, at *6-7 (Cal. Ct. App. Oct. 4, 2016) ("Credit for the production is surely a

6  matter of public interest . . . .").

7  <u>**CONCLUSION**</u>

8       For the above reasons, the Court should grant IMDb's motion for a preliminary injunction

9  and enjoin enforcement of AB 1687 against IMDb until the constitutionality and legality of the law

10  can be finally adjudicated.

11

12  Dated:  January 5, 2017             HUESTON HENNIGAN LLP

13

14                   By:   <u>/s/ John C. Hueston</u>

15                      John C. Hueston
                    Moez M. Kaba

16                      Adam L. Olin
                    Attorneys for Plaintiff IMDb.com, Inc.

17

18

19

20

21

22

23

24

25

26

27

28