Mary-Christine Sungaila (#156795)
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, CA 92626
Telephone: (949) 202-3062
Facsimile: (949) 202-3162
mc.sungaila@haynesboone.com


Polly Fohn (*Pro Hac Vice Pending*)
Natasha Breaux (*Pro Hac Vice Pending*)
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
polly.fohn@haynesboone.com
natasha.breaux@haynesboone.com

Attorneys for *Amici Curiae*
First Amendment Scholars and Legal Organizations

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMDB.COM, INC., a Delaware corporation,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>KAMALA HARRIS, in her official capacity as Attorney General of the State of California,<br><br>　　　　　Defendant. | Case No. 3:16-cv-06535-VC<br><br>**BRIEF OF *AMICI CURIAE* FIRST AMENDMENT SCHOLARS AND LEGAL ORGANIZATIONS IN SUPPORT OF PLAINTIFF IMDB.COM, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Vince Chhabria<br><br>Date: February 16, 2017<br>Time: 10:00 a.m.<br>Location: Courtroom 4 – 17th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTEREST OF *AMICI CURIAE* ................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.    AB 1687 violates the free speech clause of the First Amendment. ...................................... 2

    A.    The Supreme Court has repeatedly held that it is unconstitutional to prohibit the publication of truthful information already in the public record. ................................... 3

    B.    AB 1687 will not prevent age discrimination, but even if it did, it is unconstitutional to suppress truthful information in pursuit of this goal. ....................... 4

    C.    AB 1687 does not fall within the narrow categories of unprotected or less protected speech. ....................................................................................................... 5

    D.    AB 1687 jeopardizes the marketplace of ideas. ............................................................ 7

II.    If AB 1687 is upheld, there will be virtually no limit on the government's ability to suppress the reporting of truthful facts by other sources. ....................................................... 9

CONCLUSION .............................................................................................................................. 10

PROOF OF SERVICE ................................................................................................................... 11

i

Case No. 3:16-cv-06535-VC
Brief of *Amici Curiae* First Amendment Scholars
and Legal Organizations in Support of IMDb

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Abrams v. United States*,
    250 U.S. 616 (1919) ..................................................................................................7

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ...............................................................................................4, 5

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ....................................................................................................6

*Brandenburg v. Ohio*,
    395 U.S. 444 (1969) ..................................................................................................6

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) ..................................................................................................7

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975) ..................................................................................................3

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989) ..................................................................................................4

*Landmark Commc'ns, Inc. v. Virginia*,
    435 U.S. 829 (1978) ...............................................................................................3, 4

*Oklahoma Publishing Co. v. District Court*,
    430 U.S. 308 (1977) (per curiam) ..............................................................................3

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
    413 U.S. 376 (1973) ...............................................................................................6, 7

*Reed v. Town of Gilbert, Ariz.*,
    135 S. Ct. 2218 (2015) ..............................................................................................8

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979) ...............................................................................................3, 4

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ...............................................................................................5, 7

*United States v. Stevens*,
    558 U.S. 460 (2010) ..................................................................................................5

*Whitney v. California*,
    274 U.S. 357 (1927) (Brandeis, J., concurring) .........................................................6

**CONSTITUTION**

U.S. CONST. amend. I ................................................................................................................2

**STATUTES**

Cal. Health & Safety Code § 103526 ..........................................................................................3

**SECONDARY SOURCES**

Assemb. Floor Analysis, Third Reading, AB 1687 (Cal. May 6, 2016) ..........................................3

Assemb. Comm. on Privacy & Consumer Prot., AB 1687 (Cal. Apr. 29, 2016) ............................3

S. Judiciary Comm., AB 1687 (Cal. June 27, 2016) ................................................................8, 9

S. Floor Analyses, S. Rules Comm., AB 1687 (Cal. Aug. 3, 2016) ...........................................8, 9

Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES
    (5th ed. 2015) ...............................................................................................3, 5, 6, 7

Eugene Volokh, *Crime-Facilitating Speech*,
    57 STAN. L. REV. 1095 (2005) ................................................................................7, 8

## INTEREST OF *AMICI CURIAE*

On January 4, 2017, this Court entered an order permitting the filing of amicus briefs in support of IMDb's motion for preliminary injunction. (Dkt. No. 15.)

The *amici curiae* First Amendment Scholars include:

- Enrique Armijo, Associate Professor of Law,
  Elon University School of Law.

- Jane Bambauer, Associate Professor of Law,
  University of Arizona College of Law.

- Erwin Chemerinsky, founding Dean and Distinguished Professor of Law and Raymond Pryke Professor of First Amendment Law,
  University of California, Irvine School of Law.

- Lyrissa Lidsky, Stephen C. O'Connell Professor,
  University of Florida, Levin College of Law.

- David Olson, Associate Professor of Law,
  Boston College Law School.

- David Post, Professor of Law (ret.),
  Temple University Beasley School of Law.

- Thomas C. Rubin, Fellow at the Center for Internet and Society at Stanford Law School and former Lecturer at Stanford Law School and Harvard Law School.

- Saurabh Vishnubhakat, Associate Professor of Law,
  Texas A&M University School of Law.

- Eugene Volokh, Gary Schwartz Professor of Law,
  UCLA School of Law.

These scholars are all dedicated to the study of the freedoms guaranteed by the First Amendment and have published articles on this subject. Based on this experience, the *amici curiae* are concerned that the legislation at issue—and others like it that may be later enacted—imperil the protection of truthful speech under the First Amendment. The First Amendment Scholars seek to help the Court understand why California Assembly Bill 1687 is unconstitutional.

The *amici curiae* First Amendment Legal Organizations include the First Amendment Lawyers Association (FALA) and the Reporters Committee for Freedom of the Press.

FALA is a not-for-profit organization comprised of about 200 attorneys across the United States, Canada, and elsewhere who routinely represent businesses and individuals engaged in free expression protected by the First Amendment. FALA has a tradition of submitting amicus briefs in cases where First Amendment speech rights are endangered.

The Reporters Committee for Freedom of the Press is a voluntary, unincorporated association of reporters and editors that works to defend the First Amendment rights and freedom of information interests of the news media. The Reporters Committee has provided assistance and research in First Amendment and Freedom of Information Act litigation since 1970. Like IMDb, the Reporters Committee has an interest in ensuring that truthful information is not suppressed in violation of the free speech clause of the First Amendment.

## ARGUMENT

California Assembly Bill 1687 ("AB 1687") violates the free speech clause of the First Amendment by prohibiting IMDb's public site from reporting truthful information about the age of entertainment professionals. It purports to target discrimination, but fails to do so. Age information is readily available from alternative sources, including public records.

More importantly, even if AB 1687 effectively targeted discrimination, the Supreme Court has repeatedly held that it is unconstitutional to suppress the reporting of truthful information already in the public record. The proper remedy is not to suppress speech, but rather to enforce laws against age discrimination. Unless AB 1687 is struck down, there will be virtually no limit to the government's ability to suppress the reporting of truthful facts by other sources, including the print media. The Court should grant IMDb's motion for preliminary injunction.

**I.     AB 1687 violates the free speech clause of the First Amendment.**

The First Amendment states: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I. Laws such as AB 1687, which prohibit the publication of truthful information, strike at the core of the First Amendment.

**A.     The Supreme Court has repeatedly held that it is unconstitutional to prohibit the publication of truthful information already in the public record.**

The Supreme Court has consistently held that it is unconstitutional to impose liability for reporting truthful information that is already in the public record. *See* Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 1111 (5th ed. 2015). As the California Legislature acknowledged when it passed AB 1687, age information is readily available from public sources such as birth records. *See* Cal. Health & Safety Code § 103526.[1]

The first Supreme Court decision to delve into this issue was *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975). In *Cox*, the Supreme Court held that the First Amendment protected a media defendant from liability for reporting the name of a rape victim lawfully obtained from public court documents. *Id.* at 496-97. The court observed that "interests in privacy fade when the information involved already appears on the public record." *Id.* at 494-95.

Two years later, the Court reaffirmed this principle in *Oklahoma Publishing Co. v. District Court in and for Oklahoma County*, 430 U.S. 308 (1977) (per curiam). There, it concluded that the First Amendment protected a reporter's rights to publish a juvenile defendant's name and photograph lawfully obtained in a public courtroom proceeding. *Id.* at 308-12. The Court "held that once the truthful information was 'publicly revealed' or 'in the public domain' the court could not constitutionally restrain its dissemination." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979) (quoting *Oklahoma Publ'g Co.*, 430 U.S. at 311-12).

Although each of the Court's decisions was fact specific, the import of its jurisprudence was unmistakable. As the Court itself declared: "Our recent decisions demonstrate that state action to punish the publication of truthful information seldom can satisfy constitutional standards." *Daily Mail Publ'g Co.*, 443 U.S. at 102. In *Daily Mail*, the Court again held, in line with its previous decisions, that a statute which made it a crime for a newspaper to publish the name of any youth charged as a juvenile offender violated the First Amendment and could not

---

[1] Assembly Floor Analysis, Third Reading, AB 1687, at 2 (Cal. May 6, 2016), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1687; Assembly Comm. on Privacy & Consumer Prot., AB 1687, at 4 (Cal. Apr. 29, 2016) (same URL) (last visited Jan. 12, 2017).

3

be justified even if it protected juveniles. *Id.* at 102-06; *see also Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 830-31, 834-42 (1978) (holding unconstitutional a statute that forbad the news media from disclosing truthful information regarding ethical investigations of judges, even though confidentiality served legitimate state interests).

A decade later, the Court again found it necessary to curb the government's attempt to suppress truthful facts in the public record. *See Florida Star v. B.J.F.*, 491 U.S. 524, 526, 541 (1989). In *Florida Star*, the Court held that the First Amendment protected a newspaper from liability for reporting the name of a rape victim it obtained from a publically released police report, even if suppression of such information served the laudable purpose of protecting the privacy and safety of rape victims. *Id.* at 526, 541. It observed that punishing third-parties for "dissemination of information which is already publicly available is relatively unlikely to advance the interests in the service of which the State seeks to act." *Id.* at 535.

Here, as in the foregoing cases, California is attempting to limit the dissemination of truthful age information that is already in the public record. This Court should follow the numerous Supreme Court decisions that have struck down such laws as unconstitutional.

**B.    AB 1687 will not prevent age discrimination, but even if it did, it is unconstitutional to suppress truthful information in pursuit of this goal.**

The stated purpose of AB 1687 is to prevent "employment or age discrimination." AB 1687(a). But AB 1687 does not prevent discrimination because entertainment professionals' ages are available from many alternate sources, such as public records, newspapers, magazines, and other public websites.[2] Even if it did, the ends do not justify the means.

"The normal method of deterring unlawful conduct is to punish the person engaging in it." *Bartnicki v. Vopper*, 532 U.S. 514, 516 (2001). As the Supreme Court has noted: "It would be remarkable to hold that speech by a law-abiding possessor of information can be suppressed

---

[2] For example, when "what is the birthday of Julia Roberts" is typed into a Google search, many well-known sources such as Wikipedia, People, E! News Online, Biography.com, InStyle, and Parade report her age. Even the age of lesser known actors is easily available online. For example, when "how old is Hannah John-Kamen" (who played one of many "First Order Officers" in *StarWars: The Force Awakens*) is put into a Google search, six sources report her birthdate or age on the first search results page. (Searches run Jan. 8, 2017.)

in order to deter conduct by a non-law-abiding third party." *Id.* Yet, that is exactly what the California legislature proposes to do here by suppressing IMDb's right to publish truthful information in order to prevent age discrimination in the entertainment industry.

The facts of *Bartnicki* presented a far more compelling case for the suppression of third-party speech than the facts of this case. In *Bartnicki*, a media defendant published the contents of an illegally intercepted, private communication. *Id.* at 517. Even so, the Supreme Court concluded that the government's interest in discouraging parties from intercepting private conversations could not overcome the media's First Amendment rights. *Id.* IMDb's behavior is innocuous by comparison. It is doing nothing more than publishing age information that is already public. The government cannot justify such an incursion into core free speech rights simply because publishing an actor's age might lead to discrimination.

As the Supreme Court aptly summed it up: "Those who seek to censor or burden free expression often assert that disfavored speech has adverse effects." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011). "But 'the fear that people would make bad decisions if given truthful information' cannot justify content-based burdens on speech." *Id.* (citation omitted).

### C. AB 1687 does not fall within the narrow categories of unprotected or less protected speech.

There are limited categories of content-based speech, such as incitement of illegal activity and commercial speech, that "are unprotected or less protected by the First Amendment." Chemerinsky, CONSTITUTIONAL LAW at 977, 1036-37 (citing *United States v. Stevens*, 558 U.S. 460, 468-69 (2010)). AB 1687 falls far outside these narrow bounds.

IMDb publishes truthful information regarding the age of professionals in the entertainment industry. It is by no means advocating age or employment discrimination. Nonetheless, a brief discussion of the Supreme Court's jurisprudence concerning incitement of illegal activity shows just how far afield of the First Amendment the California Legislature has gone in this case. As Justice Brandeis stated, "even advocacy of [law] violation, however reprehensible morally, is not a justification for denying free speech where the advocacy falls

short of incitement and there is nothing to indicate that the advocacy would be immediately acted on." *Whitney v. California*, 274 U.S. 357, 376 (1927) (Brandeis, J., concurring).

The Supreme Court's decision in *Brandenburg v. Ohio*, 395 U.S. 444 (1969) illustrates the protections provided even to speech that expressly advocates violation of the law. There, news footage of a Ku Klux Klan meeting captured the appellant giving a speech in Klan regalia, stating: "We're not a revengent organization, but if our President, our Congress, our Supreme Court, continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." *Id.* at 446. The Court overturned the appellant's conviction under an Ohio statute making it unlawful to advocate violence. It held that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447.

The speech at issue in this case—publication of the ages of professionals in the entertainment industry—is far more innocuous than the constitutionally protected speech at issue in *Brandenburg*. It would be anomalous to suggest that advocating violence at a Klu Klux Klan rally is protected by the First Amendment but publishing an actor's birthdate is not.

Nor can AB 1687 find a safe harbor under the reduced First Amendment protections for commercial speech. Typically, commercial speech (1) "does 'no more than propose a commercial transaction,'" (2) makes "reference to a specific product," and (3) is driven by an "economic motivation." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64-65 (1983) (citation omitted). Unlike IMDbPro, the profiles on IMDb's public site are not paid for by subscribers. (Dkt. No. 16 at p. 3.) Rather, IMDb's public site relies on non-paying users from around the world to submit content to create an encyclopedia of information regarding the entertainment industry (similar to Wikipedia). *Id.* Thus, the age information on IMDb's public site does not propose a commercial transaction or reference a product and is not posted with an economic motivation. In short, IMDb's publication of age information lacks all of the key characteristics of commercial speech.

Even if age information were deemed commercial speech, AB 1687 is still unconstitutional. Granted, "advertising of illegal activities is not protected by the First Amendment." Chemerinsky, CONSTITUTIONAL LAW at 1154 (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973)). However, while employment discrimination is illegal, publishing age information is not. To illustrate the distinction, in *Pittsburgh Press*, a newspaper placed help-wanted advertisements under gender-designated columns (such as "Female Help Wanted"). 413 U.S. at 378-80. The Court held that an ordinance that prohibited aiding discriminatory advertising did not violate the First Amendment because "the commercial activity itself [wa]s illegal and the restriction on advertising [wa]s incidental to a valid limitation on economic activity." *Id.* at 388-89. In contrast, IMDb does not itself post, or aid in posting, age discriminatory advertisements.

Where commercial speech is lawful and not misleading, regulation of such speech is only allowed if, among other things, it "directly advances a substantial governmental interest." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). The Supreme Court "has declined to uphold regulations that only indirectly advance the state interest involved." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980). Again, AB 1687 does not prevent age discrimination because age information is available from other sources. *See supra* part I.B. Thus, even if AB 1687 targets commercial speech, it is unconstitutional.

**D.     AB 1687 jeopardizes the marketplace of ideas.**

A "classic argument for protecting freedom of speech as a fundamental right is that it is essential for the discovery of truth." Chemerinsky, CONSTITUTIONAL LAW at 1111. "Justice Oliver Wendell Holmes invoked the powerful metaphor of the 'marketplace of ideas' and wrote that 'the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out.'" *Id.* (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). Suppressing truthful information jeopardizes the marketplace of ideas.

Limiting what is termed "crime-facilitating speech" is based on the theory that certain crimes cannot be committed without certain factual information. Eugene Volokh, *Crime-

7

*Facilitating Speech*, 57 STAN. L. REV. 1095, 1096-1103, 1107 (2005). If you prevent a would-be criminal from acquiring the facts needed to commit a crime, then you prevent the crime. *Id*. at 1103, 1107. For example, if you prevent would-be suicide bombers from acquiring instructions on how to make a bomb, you prevent suicide bombings. The premise of AB 1687 is that if you prevent casting directors from obtaining age information, then you prevent age discrimination.

However, most crime-facilitating speech has both valuable and harmful uses. *Id.* at 1105, 1126-27. For example, although books about explosives can be misused by suicide bombers, they can also educate students on chemistry and engineering principles. *See id.* at 1112. Thus, the problem with banning crime-facilitating speech is that it prohibits both valuable uses and harmful ones. *See id.* at 1105, 1127. Even if there are some circumstances where the harmful nature of crime-facilitating speech outweighs its benefits, this is not such a case. The disclosure of the ages of entertainment professionals has many valuable uses, including entertaining, satisfying curiosity, and educating. *See id.* at 1111-26. Disclosure can even help make the public aware of age discrimination so that the public can advocate against such discrimination through their purchase decisions. *See id.* at 1115-21. For instance, when enacting AB 1687, the legislature expressed concern about the "practice of casting a much younger female against a much older male."[3] If the public does not know the ages of actors in movies, they cannot fight age discrimination by watching only movies in which the actors are similarly aged.

AB 1687 focuses on only the harmful use of age information, which purportedly is to discriminate against actors, and does not even fully serve that interest. A "'law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.'" *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232 (2015) (citation omitted). Again, forbidding IMDb's public site from reporting age information will not prevent age discrimination because casting directors can easily find out the same age information from many

---

[3] S. Floor Analyses, S. Rules Comm., AB 1687, at 3 (Cal. Aug. 3, 2016); S. Judiciary Comm., AB 1687, at 2 (Cal. June 27, 2016), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1687 (last visited Jan. 12, 2017).

other sources. *See supra* part I.B. For AB 1687 to be wholly inclusive, it would have to forbid anyone and everyone from reporting entertainment professionals' age information to the public. And for AB 1687 to be effective, it would have to be wildly broad. For instance, reporting that an actress played a part in a 1976 film means she is at least 40 years old and could be categorized as "age information."

In fact, the constitutional concerns raised by AB 1687 are so compelling that a report from the Senate Judiciary Committee advised that the law "could impact the exercise of free speech on . . . news Web sites that profile figures in the entertainment industry." *See* S. Judiciary Comm., AB 1687, at 5-6 (Cal. June 27, 2016).[4] It advised the Committee "to consider an amendment restricting the reach of this bill to only cover sensitive age information disclosed as part of the subscriber-service provider relationship." *Id.* Despite knowing that AB 1687 could limit free speech, the legislature disregarded that recommendation.

In sum, IMDb's public site should not be prohibited from providing facially innocuous and valuable information from the world, just because the information has the potential to be used wrongly by a few casting directors. To do so is unconstitutional.

**II.     If AB 1687 is upheld, there will be virtually no limit on the government's ability to suppress the reporting of truthful facts by other sources.**

If AB 1687 is upheld, the California legislature could be given a blank check to enact other laws suppressing truthful information in the name of preventing unlawful conduct. Such laws could reach nearly any source of information, including the print media.

For example, the legislative history of AB 1687 shows that, in addition to age discrimination, the legislature was also concerned about sex discrimination against women.[5] If the government can suppress age information in fear of age discrimination, then surely the government can suppress sex information in fear of sex discrimination. Under a law targeting

---

[4] *Available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1687.

[5] *See* S. Floor Analyses, S. Rules Comm., AB 1687, at 3 (Cal. Aug. 3, 2016), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1687; S. Judiciary Comm., AB 1687, at 2 (Cal. June 27, 2016) (same URL) (last visited Jan. 12, 2017).

9

sex discrimination, IMDb's public site would be forced to remove all information that could possibly reveal the gender of entertainment professionals, including pronouns, pictures, and names if not gender-neutral. Likewise, race information, such as pictures, could be suppressed in fear of race discrimination. National origin information, such as which country someone is from, could be suppressed in fear of national origin discrimination. The list of facts that could be suppressed in the name of preventing discrimination is limitless.

Moreover, if it is constitutional for the government to suppress IMDb's public site from reporting age information, there will be virtually no limit to the government's ability to suppress the reporting of many other truthful facts by many other sources—from websites to magazines to newspapers to individual bloggers. Particularly in an age where the media is struggling to combat the pernicious effects of false news, the truth should not be suppressed.

## CONCLUSION

Truthful facts, like many things, may be wrongly used by some. This does not mean the truth should be withheld from all. Allowing the government to prohibit IMDb's public site from reporting the age information of entertainment professionals in fear of age discrimination would be an unprecedented, unconstitutional act. Worse, it could lead to prohibitions on reporting many other truthful facts by many other sources. This case is not a close call. AB 1687 violates the free speech clause of the First Amendment. Accordingly, the Court should grant IMDb's motion for preliminary injunction.

Dated: January 12, 2017                                     HAYNES AND BOONE, LLP

                                                By:     /s/ Mary-Christine Sungaila

                                                        Mary-Christine Sungaila
                                                        Counsel for *Amici Curiae*
                                                        First Amendment Scholars and
                                                        Legal Organizations

## PROOF OF SERVICE

I hereby certify that on January 12, 2017, I filed the forgoing **Brief of *Amici Curiae* First Amendment Scholars and Legal Organizations in Support of IMDb.com, Inc.'s Motion for Preliminary Injunction** with the Court through this district's CM/ECF system. Pursuant to Local Rule 5 – 3.3, the "Notice of Electronic Filing" automatically generated by the CM/ECF at the time the document is filed with the system constitutes automatic service of the document on counsel of record who have consented to electronic service.

Dated: January 12, 2017

                                  By:    <u>/s/ Mary-Christine Sungaila</u>
                                             Mary-Christine Sungaila