1  KATHLEEN A. KENEALY
   Acting Attorney General of California
2  STEPAN A. HAYTAYAN
   Supervising Deputy Attorney General
3  ANTHONY R. HAKL
   Deputy Attorney General
4  State Bar No. 197335
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone:  (916) 322-9041
     Fax:  (916) 324-8835
7    E-mail:  Anthony.Hakl@doj.ca.gov
   *Attorneys for Defendant*
8  *Acting Attorney General Kathleen A. Keneally*

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13 **IMDb.COM, INC., a Delaware corporation**, | 3:16-cv-06535 |
| 14                                  Plaintiff, | |
| 15              **v.** | **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| 16 | |
| 17 **KATHLEEN A. KENEALY, in her official capacity as Acting Attorney General of the State of California,**[1] | Date:        February 16, 2017 |
| 18 | Time:        10:00 a.m. |
| 19                              Defendant. | Dept.:       No. 4 – 17th Floor |
| 20 | Judge:       Honorable Vince Chhabria |
| | Trial Date:  None |
| | Action Filed:  November 10, 2016 |

21

22

23

24

25

26

---

27      [1] Under Federal Rule of Civil Procedure 25(d), Acting Attorney General Kathleen A.
   Kenealy is automatically substituted as a defendant in place of her predecessor, Kamala D. Harris.
28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Background ..................................................................................................................... 2

    I.      Section 1798.83.5 (AB 1687) ................................................................... 2

    II.     Plaintiff's Complaint .................................................................................. 3

          A.     The Parties ....................................................................................... 3

          B.     Plaintiff's Claims ............................................................................ 4

Applicable Legal Standards ........................................................................................... 4

Argument ....................................................................................................................... 5

    I.      Plaintiff Has No Likelihood of Success on the Merits ............................. 5

          A.     Plaintiff Will Not Succeed on Its Free Speech Claim ..................... 5

                1.      Because Section 1798.83.5 Regulates Contracts Between Employment Service Providers and Their Paying Subscribers, as Opposed to Speech, the First Amendment Does Not Apply. ..................................................................... 5

                2.      Even if Section 1798.83.5 Concerns Speech, It is a Permissible Regulation of Commercial Speech. ........................... 8

          B.     Plaintiff Will Not Succeed on Its Commerce Clause Claim Because Section 1798.83.5 Does Not Directly Regulate Interstate Commerce. ....................................................................................... 11

          C.     Plaintiff Will Not Succeed on Its Federal Statutory Claim Because the Immunity Provided by Section 230 of the CDA Does Not Apply. ............................................................................................ 13

    II.     Plaintiff Fails to Meet Their Burden to Demonstrate Irreparable Harm ............... 14

    III.    The Balance of Hardships and Public Interest Weigh Against Granting Preliminary Relief. ................................................................................ 15

Conclusion ................................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

4

**CASES**

5

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011)..............................................................................4

6

7

*Allied Structural Steel Co. v. Spannaus*
   438 U.S. 234 (1978) ...........................................................................................7

8

*Anderson v. Holder*
   673 F.3d 1089 (9th Cir. 2012)...........................................................................10

9

10

*Board of Trs. v. Fox*
   492 U.S. 469 (1989) ...........................................................................................9

11

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*
   476 U.S. 573 (1986) .........................................................................................11

12

13

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of New York*
   447 U.S. 557 (1980) ........................................................................................8, 9

14

15

*Cincinnati v. Discovery Network, Inc.*
   507 U.S. 410 (1993) ...........................................................................................8

16

*City of Richmond v. J.A. Croson Co.*
   488 U.S. 469 (1989) ...........................................................................................9

17

18

*Clark v. Cmty. for Creative Non–Violence*
   468 U.S. 288 (1984) ...........................................................................................5

19

*Coalition for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997)...............................................................................5

20

21

*Cohen v. Cowles Media Co.*
   501 U.S. 663 (1991) ....................................................................................5, 6, 7

22

*Connecticut Bar Ass'n v. United States*
   620 F.3d 81 (2d Cir. 2010)..................................................................................8

23

24

*Cupolo v. Bay Area Rapid Transit*
   5 F. Supp. 2d 1078 (N.D. Cal. 1997) ..................................................................5

25

26

*DVD Copy Control Ass'n, Inc. v. Bunner*
   31 Cal. 4th 864 (2003) ........................................................................................7

27

28

ii

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*
859 F.2d 610 (9th Cir. 1988)......................................................................9

4

5

*F.T.C. v. Accusearch Inc.*
570 F.3d 1187 (10th Cir. 2009)...............................................................14

6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*
521 F.3d 1157 (9th Cir. 2008)................................................................13

7

8

*Goldie's Bookstore, Inc. v. Superior Ct.*
739 F.2d 466 (9th Cir. 1984)..................................................................14

9

10

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*
742 F.3d 414 (9th Cir. 2014).............................................................11, 12

11

*Greater New Orleans Broad. Ass'n v. U.S.*
527 U.S. 173 (1999) ..................................................................................9

12

13

*Kobell v. Suburban Lines, Inc.*
731 F.2d 1076 (3rd Cir.1984) ................................................................15

14

15

*Louis v. McCormick & Schmick Restaurant Corp.*
460 F. Supp. 2d 1153 (C.D. Cal. 2006)................................................10

16

*Nat'l Fed'n of the Blind v. Target Corp.*
452 F. Supp. 2d 946 (N.D.Cal. 2006)...................................................12

17

18

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
434 U.S. 1345 (1977).............................................................................15

19

20

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
762 F.2d 1374 (9th Cir. 1985)................................................................14

21

*Outdoor Sys. Inc. v. City of Mesa*
997 F.2d 604 (9th Cir. 1993)....................................................................9

22

23

*Perkins v. Linkedin Corp.*
53 F. Supp. 3d 1222 (N.D. Cal. 2014) ...................................................14

24

25

*Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*
768 F.3d 1037 (9th Cir. 2014)................................................................12

26

*Reed v. Town of Gilbert, Ariz.*
135 S. Ct. 2218 (2015) .............................................................................7

27

28

iii

1

### TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*SPGGC, LLC v. Blumenthal*
    505 F.3d 183 (2d Cir. 2007)..................................................................13

4

5

*True the Vote v. Hosemann*
    43 F. Supp. 3d 693  (S.D. Miss. 2014)......................................................6

6

*U.S. Trust Co. of N.Y. v. New Jersey*
    431 U.S. 1 (1977)......................................................................................7

7

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*
    550 U.S. 330 (2007)................................................................................13

8

9

*Valley Bank of Nevada v. Plus Sys., Inc.*
    914 F.2d 1186 (9th Cir. 1990)................................................................11

10

11

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)..................................................................................4, 5

12

13

**STATUTES**

14

15 United States Code
    §§ 6501-6506..........................................................................................8

15

16

18 United States Code
    § 2710.....................................................................................................7

17

20 United States Code
    § 1232g....................................................................................................8

18

19

47 United States Code
    § 551.......................................................................................................8
    § 230.....................................................................................................13
    § 230(c)(1)..............................................................................................4

20

21

22

California Civil Code
    § 1798.83.5.................................................................................... *passim*
    § 1798.83.5(a)..........................................................................................3
    § 1798.83.5(b)......................................................................................3, 7
    § 1798.83.5(d)(1).....................................................................................3
    § 1798.83.5(d)(4)..................................................................................3, 7

23

24

25

**COURT RULES**

26

Federal Rules of Civil Procedure
    Rule 5.2(a)(2)..........................................................................................6

27

28

iv

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Federal Rules of Evidence
  Rule 201 ................................................................................................................................10

**OTHER AUTHORITIES**

Neil M. Richards, *Reconciling Data Privacy and the First Amendment*, 52 UCLA
  L. Rev. 1194-96 (2005) ...........................................................................................................8

**INTRODUCTION**

Plaintiff IMDb.com, Inc. ("IMDb") asks this Court to preliminarily enjoin the operation of Assembly Bill No. 1687, which the California Legislature passed to combat age discrimination in employment in the entertainment industry.  The bill added section 1798.83.5 to the California Civil Code, which became effective on January 1, 2017.[2]  The law limits the disclosure of date of birth and age information by certain commercial online entertainment employment service providers such as IMDb.  The law imposes those limits by regulating the contracts for employment services between those online service providers and their paying subscribers.

Many Internet users likely know of IMDb, and its popular Web site http://www.imdb.com/ ("IMDb.com"), which is effectively accessible to the public at no cost.  A fewer number of those users are likely familiar with IMDb's employment service, known as IMDbPro, and its accompanying Web site, which is accessible only to paying subscribers.  Section 1798.83.5 applies to IMDb as a function of its operation of IMDbPro, because that is the paid commercial service that involves a "contractual agreement" that triggers the statute's limitations.  But the law's nondisclosure requirement applies across the IMDb platform as a whole, so to speak.  This includes both IMDbPro – as the actual employment service – and IMDb.com – as a "companion" Web site under the control of IMDb under section 1798.83.5.

IMDb points out, and Defendant has no reason to dispute, that even without AB 1687 IMDbPro users are free to manage their own online profiles and make content decisions, including whether to display date of birth and age information.  Yet IMDb takes issue with section 1798.83.5's prohibition against the disclosure of such information on the IMDb.com, claiming a First Amendment right to publicize what it calls "factual age information."  Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot.") at 1.  However, IMDb has failed to demonstrate any likelihood of success on its First Amendment claim.

Simply stated, section 1798.83.5 involves a contract-based nondisclosure rule.  It is a valid regulation of voluntary commercial contracts, and any incidental effect on speech does not

---

[2] All further statutory references are to the California Civil Code unless otherwise indicated.

1

1  implicate a First Amendment right.  State regulation of commercial contracts is unremarkable,

2  and IMDb should not be allowed to shield its commercial contract activity from legitimate

3  commercial regulation simply by linking it with its own free, public information Web site.

4  Finally, even if the law implicates the First Amendment, which it does not, it is nonetheless a

5  lawful regulation of commercial speech.  Section 1798.83.5 is a regulation that is no more

6  extensive than necessary to further California's substantial, indeed compelling, state interest in

7  combatting age discrimination.

8      IMDb also has failed to demonstrate any likelihood of success on its Commerce Clause or

9  federal statutory preemption claim.  With respect to the Commerce Clause claim, section

10  1798.83.5 is valid because it does not directly regulate interstate commerce.  Regarding the

11  preemption claim, section 1798.83.5 is not preempted because the federal Communications

12  Decency Act of 1996 does not apply to the matters regulated by section 1798.83.5.

13      Because IMDb's claims lack merit, there is no possibility of irreparable injury to IMDb if

14  its motion is denied.  In addition, the balance of hardships and the public interest against age

15  discrimination strongly counsel in favor of upholding the operation of the law as intended by the

16  People's representatives.  The Court therefore should deny IMDb's motion in its entirety.

17                                    **BACKGROUND**

18  **I.    SECTION 1798.83.5 (AB 1687)**

19      Although it became effective earlier this year, the Legislature passed AB 1687 last year and

20  the Governor approved it on September 24, 2016.

21      Section 1798.83.5 governs contracts between "commercial online entertainment

22  employment service providers" and their paying subscribers.  As defined by the law, a

23  "commercial online entertainment employment service provider" is "a person or business that

24  owns, licenses, or otherwise possesses computerized information, including, but not limited to,

25  age and date of birth information, about individuals employed in the entertainment industry,

26  including television, films, and video games, and that makes the information available to the

27  public or potential employers." § 1798.83.5(d)(1).  A "subscriber" is "a natural person who

28  enters into a contractual agreement with a commercial online entertainment employment service

2

provider to receive employment services in return for a subscription payment."

§ 1798.83.5(d)(4).

The express purpose of the law is "to ensure that information obtained on an Internet Web site regarding an individual's age will not be used in furtherance of employment or age discrimination."  § 1798.83.5(a).  To that end, the statute, provides:

> A commercial online entertainment employment service provider that enters into a contractual agreement to provide employment services to an individual for a subscription payment shall not, upon request by the subscriber, do either of the following:
>
> (1) Publish or make public the subscriber's date of birth or age information in an online profile of the subscriber.
>
> (2) Share the subscriber's date of birth or age information with any Internet Web sites for the purpose of publication.

§ 1798.83.5(b).

Under the statute, a commercial online entertainment employment service provider subject to the above requirement "shall, within five days, remove from public view in an online profile of the subscriber the subscriber's date of birth and age information on any companion Internet Web sites under its control upon specific request by the subscriber naming the Internet Web sites." § 1798.83.5(b)  Any such service provider "that permits members of the public to upload or modify Internet content on its own Internet Web site or any Internet Web site under its control without prior review by that provider shall not be deemed in violation of this section unless first requested by the subscriber to remove age information." *Id.*

## II.   PLAINTIFF'S COMPLAINT

### A.    The Parties

Plaintiff IMDb operates http://www.imdb.com/ ("IMDb.com"), a publically-accessible online information database regarding films, television shows, and professionals in the entertainment industry.  Compl. at 2.  The information available on IMDb.com is provided by IMDb itself along with users of the site, although IMDb routinely updates and verifies information provided by users.  *Id.*

3

1    IMDb also operates IMDbPro, a subscription service that allows industry professionals to

2    create their own profile pages, including a résumé, for example, and to access job listings,

3    company information, and information regarding other industry professionals.  Compl. at 2-3.

4    Defendant Kathleen A. Kenealy is sued in her official capacity as Acting Attorney General

5    of the State of California.  *See* Compl. at 5 & n.1, *supra*.  As the chief law officer for California,

6    she is authorized to enforce state law, including section 1798.83.5.

7        **B.    Plaintiff's Claims**

8        IMDb advances three claims in connection with the instant motion.  The first is that section

9    1798.83.5 is a content-based regulation of speech that violates the First Amendment because it is

10   not narrowly drawn to serve a compelling state interest.  *See* Compl. at 10-11.  The second claim

11   is that the law violates the Commerce Clause because it is not limited "to conduct in and related

12   to California."  Compl. at 13.  The third claim is that section 230(c)(1) of the Communications

13   Decency Act ("CDA") preempts section 1798.83.5, which IMDb argues impermissibly imposes

14   liability on it for content created by a third party.

15              **APPLICABLE LEGAL STANDARDS**

16       "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

17   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

18   balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat.*

19   *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Alternatively, in the Ninth Circuit, "[a]

20   preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions

21   going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."

22   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  Plaintiffs must

23   make a showing of all four *Winter* factors even under this alternative test.  *Id*. at 1132, 1135.

24       "A preliminary injunction is an extraordinary remedy never awarded as a matter of right.

25   In each case, courts must balance the competing claims of injury and must consider the effect on

26   each party of the granting or withholding of the requested relief.  In exercising their sound

27   discretion, courts of equity should pay particular regard for the public consequences in employing

28   the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (internal quotations and citations

4

1  omitted).  Because a preliminary injunction is an extraordinary remedy, the moving party must

2  establish the necessary elements by a "clear showing."  *Winter*, 555 U.S. at 22.  A plaintiff's

3  burden is particularly heavy when, as here, it seeks to enjoin operation of a statute because "it is

4  clear that a state suffers irreparable injury whenever an enactment of its people or their

5  representatives is enjoined."  *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir.

6  1997).  "A strong factual record is therefore necessary before a federal district court may enjoin a

7  State agency."  *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997).

8  **ARGUMENT**

9  **I.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS.**

10      **A.    Plaintiff will not succeed on its free speech claim.**

11          **1.    Because section 1798.83.5 regulates contracts between employment
12               service providers and their paying subscribers, as opposed to speech,
             the First Amendment does not apply.**

13  As the party invoking the First Amendment, IMDb first must demonstrate that it applies at

14  all to the regulated action.  *See*, *e.g.*, *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288,

15  293 n.5 (1984) ("it is the obligation of the person desiring to engage in assertedly expressive

16  conduct to demonstrate that the First Amendment even applies").  Because section 1798.83.5

17  regulates economic contractual relationships, not protected speech, IMDb cannot meet its burden.

18  The First Amendment is not a source of "limitless" protection, not even for the publication

19  of truthful information acquired lawfully.  *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991).

20  In *Cohen*, the Supreme Court held that the First Amendment did *not* prohibit a plaintiff from

21  recovering damages, under a state promissory estoppel law, for a newspaper's breach of a

22  promise of confidentiality given to the plaintiff in exchange for information.  *Id*. at 665.  The

23  Court reasoned, in part, that the law was one of general applicability that had "incidental effects"

24  on the newspaper's ability to gather and report the news.  *Id*. at 669.  Moreover, the Court was

25  persuaded by the fact that the agreement between the plaintiff and the newspaper was in the form

26  of a contract.  As the Court put it:  "The parties themselves . . . determine the scope of their legal

27  obligations, and any restrictions that may be placed on the publication of truthful information are

28  self-imposed."  *Id*. at 671.

5

1    The Court should apply similar reasoning here.  While section 1798.83.5 may not be a

2    generally applicable law, the key point is that it has only "incidental effects," if any, on IMDb's

3    ability to publish factual information.  *Cohen*, 501 U.S. at 669.  Section 1798.83.5 is hardly

4    sweeping in its scope.  It narrowly proscribes the disclosure of a discreet category of private,

5    sensitive information.[3]  And the only reason the proscription extends to the publicly-accessible

6    IMDb.com (as opposed to only IMDbPro), is a result of IMDb's decision to effectively conjoin

7    their two products.  Such an arrangement cannot be used to insulate IMDb from a legitimate

8    business regulation.  After all, a subscriber pays a fee to IMDbPro, effectively "hiring" the

9    service to host his or her online profile, assist with business connections, access and facilitate

10   employment opportunities, and so on.  And it is undisputed that IMDbPro allows a paying

11   subscriber to omit any mention of date of birth or age information from his or her profile.  Thus,

12   there is a basic unfairness to allowing IMDb to turn around and publish that same information on

13   another site it owns and controls, not to mention makes freely available, just because it happens to

14   be outside the subscription.  Section 1798.83.5 guards against that unfairness by requiring IMDb

15   – the company that entered into a contract with a paying subscriber to provide employment

16   services – to remove date of birth or age information across all of the sites it controls, if that is

17   what a paying subscriber chooses to do.

18       To be sure, the plain language of section 1798.83.5 places it in the category of a regulation

19   of economic contracts between private parties.  In relevant part, the law applies to any

20   commercial online entertainment service provider "*that enters into a contractual agreement* to

21   provide employment services."  §1798.83.5(b) (italics added).  Similarly, it applies to any

22   "subscriber" to those services, who the law defines as "a natural person *who enters into a*

---

[3] The record does not support plaintiff's characterization of date of birth or age information as "public information."  Pl.'s Mot. at 2 & 10.  Plaintiff has submitted no evidence on that point.  Moreover, in many contexts such information is deemed private and not subject to disclosure.  *See, e.g.*, *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736–37 (S.D. Miss. 2014) ("various courts have recognized in the context of FOIA litigation that birthdates are sensitive information and have construed FOIA's "Exemption 6" to protect the disclosure of birthdates"); Fed. R. Civ. P. 5.2(a)(2) (requiring certain age information be redacted from court filings for privacy reasons).

*contractual agreement* with a commercial online entertainment employment service provider to receive employment services in return for a subscription payment."  § 1798.83.5(d)(4) (italics added).  Accordingly, IMDb has no basis upon which to complain of a First Amendment violation.  *See Cohen*; 501 U.S. at 670-71; *see also DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 895 (2003) ("Both the United States Supreme Court and this court have recognized that the First Amendment right to free expression may be legitimately circumscribed by state law intellectual property rights.").  Indeed, as a general matter, states have considerable leeway in regulating contracts between private parties.  *See, generally, Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) ("It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public[.]"); *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22 (1977) (states have "broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result").[4]

Additionally, while section 1798.83.5 subjects contracts between IMDb and its paying subscribers to a particular kind of regulation, it cannot reasonably be questioned that those contracts are voluntary.  IMDb and its paying subscribers mutually agree to enter into contracts for employment services, with each side remaining free not to enter into any contract in the first place.  Thus, the decision to contract is "self-imposed."  *Cohen*, 501 U.S. at 671.

Finally, acceptance of IMDb's First Amendment theory here would imperil a host of similar nondisclosure laws that apply in the context of voluntary consumer transactions.  *See, e.g.,* 18 U.S.C. § 2710 (limiting disclosure of personal information in video tape rental or sale records); 47 U.S.C. § 551 (regulating collection, use, and disclosure by cable operators of "personally identifiable" information regarding cable subscribers); 20 U.S.C. 1232g (concerning "release of education records (or personally identifiable information therein . . . .)"); 15 U.S.C. §§

---

[4] Plaintiff's reliance on *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) is misplaced.  *Reed* concerned restrictions on signs and billboards aimed at the general public.  The case casts no doubt on *Cohen*, or these other commercial contract precedents.

6501-6506 (Children's Online Privacy Protection Act requirements governing disclosure of personal information).  *See also* Neil M. Richards, *Reconciling Data Privacy and the First Amendment*, 52 UCLA L. Rev. 1194-96 (2005) (commercial nondisclosure or confidentiality rules generally have never been thought to fall within the scope of the First Amendment's protection).  For this reason as well, the Court should reject IMDb's theory.

### 2.   Even if section 1798.83.5 concerns speech, it is a permissible regulation of commercial speech.

Even assuming this is a First Amendment case, which it is not, section 1798.83.5 concerns commercial speech.  Commercial speech is an "expression related solely to the economic interests of the speaker and its audience," or, alternatively, speech "proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of New York*, 447 U.S. 557, 560 (1980).  The Supreme Court has recognized that this definition is hardly precise and it is often difficult to distinguish between commercial and noncommercial speech.  *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993) (recognizing difficulty of "drawing bright lines that will clearly cabin commercial speech in a distinct category").

IMDb argues that this case concerns speech unconnected to a business transaction.  On the contrary, by its terms the statute regulates speech only in the context of contractual agreements between entities like IMDb and its paying subscribers.  Additionally, because such contracts concern the provision of *employment* services by businesses like IMDb, and the receipt of such services by paying subscribers, any speech in connection with those contracts concerns the economic interests of the parties to those transactions.  Thus, if section 1798.83.5 regulates speech at all, it regulates commercial speech.  *See*, *generally*, *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 94 (2d Cir. 2010) (concluding that "the contract requirements of [a federal statute] qualify as commercial speech").

Accordingly, the strict scrutiny urged by IMDb does not apply.  Rather, the less-than-strict review under *Central Hudson* applies.  In *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980), the Supreme Court set out the four-part First Amendment test applicable to a statute regulating commercial speech.  As the Court explained:

8

1

2

3

4

5

> At the outset, we must determine [1] whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask [2] whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

6   *Central Hudson*, 447 U.S. at 566.

7       Here, the first and second parts of the *Central Hudson* test are not at issue.  At this stage of

8   the proceedings, it does not appear that the relevant date of birth or age information is either

9   misleading or related to unlawful activity.  Nor is there any dispute that combatting age

10  discrimination in employment is a substantial and compelling state interest.  *See*, *e.g.*, *City of*

11  *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 536 (1989) (remedying past discrimination is

12  compelling interest); *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 620-621 (9th Cir.

13  1988) (same).  Thus, any *Central Hudson* analysis turns on the third and fourth parts of the

14  applicable test.

15      With regard to the third part, that the regulation directly advance the government's

16  interests, California is required to point to something more than "mere speculation or conjecture"

17  to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them

18  to a material degree."  *Greater New Orleans Broad. Ass'n v. U.S.*, 527 U.S. 173, 188 (1999)

19  (citation omitted).  Related, the fourth part of the test asks whether the speech restriction is more

20  extensive than necessary to serve the interests that support it.  *Id.*  This element does not require

21  that California adopt the least restrictive means for achieving its objectives.  *Board of Trs. v. Fox*,

22  492 U.S. 469, 480, (1989); *Outdoor Sys. Inc. v. City of Mesa*, 997 F.2d 604, 610 (9th Cir. 1993).

23  Rather, there need only be a "reasonable fit" between the government's ends and the means

24  chosen to accomplish those ends.  *Fox*, 492 U.S. at 480; *see Greater New Orleans Broad. Ass'n*,

25  527 U.S. at 188 (requiring "a fit that is not necessarily perfect, but reasonable").

26      The Legislature passed AB 1687 to address age discrimination in the entertainment

27  industry, which "remains a problem" despite the state's civil rights laws.  Sen. Rules Com.,

28  Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) Aug. 3, 2016, at 3; *see* Sen. Com. on

9

1   Judiciary, Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) June 14, 2016, at 1 (despite

2   laws like Fair Employment and Housing Act and Unruh Civil Rights "age discrimination remains

3   a problem in the entertainment industry"); Assem. Com. on Privacy & Consumer Protection,

4   Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) May 3, 2016, at 2 ("age discrimination

5   continues to exist and is facilitated through public distribution of potential job applicant's birth

6   and age information via commercial online employment service providers").[5]

7        Thus, IMDb's argument that the State simply needs to enforce its current age discrimination

8   laws falls short.  The Legislature determined that, in this particular industry, those laws have

9   proven insufficient to eliminate discrimination.  As a further remedial measure, AB 1687 was

10  designed to limit the availability of age information of entertainment industry professionals.  As

11  the author of the bill observed, "[i]n particular, actors are often cast in roles in which they portray

12  characters who are younger or older than their real biological age. . . . As actors age, they are very

13  concerned that they will be shut out from parts based on unlawful age bias."  Sen. Rules Com.,

14  Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) Aug. 3, 2016, at 4.

15       The restriction also is no more extensive than necessary.  It only applies to commercial

16  online entertainment employment service providers and subscribers who enter into contractual

17  agreements for employment services.  Thus, if the law regulates speech, at most it comes into

18  play in a relatively limited context, paid employment services specific to the entertainment

19  industry.  Third parties to the contractual agreements (i.e., those outside of the voluntary,

20  mutually beneficial agreements like those between IMDb and its paying subscribers) are not

21  covered by the law.  The provisions also limit access to age information only, a limited category

22  of information.

23

24   ───────────────────
        [5] This legislative history is attached to the declaration of the undersigned filed in support
25  of this opposition.  Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial
    notice of the legislative history of state statutes. *Anderson v. Holder*, 673 F.3d 1089, 1094, n.1
26  (9th Cir. 2012); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155,
    n.4 (C.D. Cal. 2006).  The Acting Attorney General respectfully requests that this Court take
27  judicial notice of the relevant legislative history here.

28

1   The text of section 1798.83.5 and its legislative history show that the Legislature
2   understood the problem of age discrimination in the entertainment industry to be real, adopted the
3   provision to aid in solving that problem, and matched the restriction to the problem to be
4   addressed.  Thus, if section 1798.83.5 is to be considered a speech regulation, it is a valid
5   commercial speech regulation.

6   **B.    Plaintiff will not succeed on its Commerce Clause claim because
section 1798.83.5 does not directly regulate interstate commerce.**
7

8   "The Supreme Court has outlined a 'two-tiered approach to analyzing state economic
9   regulation under the Commerce Clause.'"  *Valley Bank of Nevada v. Plus Sys., Inc.*, 914 F.2d
10  1186, 1189 (9th Cir. 1990) (quoting *Brown-Forman Distillers Corp. v. New York State Liquor*
11  *Auth.*, 476 U.S. 573, 578-79 (1986)).

12  > When a statute directly regulates or discriminates against interstate commerce, or
13  > when its effect is to favor in-state economic interests over out-of-state interests, we
> have generally struck down the statute without further inquiry.  When, however, a
14  > statute has only indirect effects on interstate commerce and regulates
> evenhandedly, we have examined whether the State's interest is legitimate and
15  > whether the burden on interstate commerce clearly exceeds the local benefits.

16  *Brown-Forman Distillers Corp.*, 476 U.S. at 579 (citations omitted).

17  IMDb argues that section 1798.83.5 is "per se" invalid because it directly regulates
18  interstate commerce.[6]  As the Ninth Circuit has explained, "direct regulation of interstate
19  commerce 'occurs when a state law directly affects transactions that take place across state lines
20  or entirely outside of the state's borders.'"  *Greater Los Angeles Agency on Deafness, Inc. v.*
21  *Cable News Network, Inc.*, 742 F.3d 414, 432 (9th Cir. 2014) (quoting *Valley Bank of Nev.*, 914
22  F.2d at 1189–90.)  The Commerce Clause "forbids a state from regulating commerce 'that takes
23  place wholly outside of the State's borders, whether or not the commerce has effects within the
24  State.' [Citation.]  In determining whether the [statute] directly regulates interstate commerce, we
25  focus our inquiry on the 'practical effect' of the statute.  [Citations.]"  *Greater Los Angeles*
26  *Agency on Deafness*, 742 F.3d at 432–33.

27  ───────────────
28  [6] Plaintiff advances no argument under the alternative balancing approach.

11

1    IMDb argues that section 1798.83.5 regulates commerce that takes place wholly outside

2    California's borders, or more precisely, that "AB 1687 is not limited to conduct that has a

3    sufficient nexus to California."  Pl.'s Mot. at 10.  Yet even IMDb's own hypothetical transaction

4    – which involves a user in Germany, an actor in California, and IMDb, which unquestionably

5    does business in California – does not support that assertion.  Indeed, "there is nothing unusual or

6    unconstitutional per se about a state or county regulating the in-state conduct of an out-of-state

7    entity when the out-of-state entity chooses to engage the state or county through interstate

8    commerce."  *Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1043–44 (9th

9    Cir. 2014) (county ordinance requiring pharmaceutical companies doing business in the county to

10   establish a prescription drug disposal program was not impermissible extraterritorial regulation).

11   Additionally, IMDb has failed to show an inability to create a California version of its

12   Internet site which would avoid the potential for any Commerce Clause violation.  The Ninth

13   Circuit rejected a commerce clause challenge to a California law requiring closed-captioning on a

14   network's Web site for precisely this reason.  *See Greater Los Angeles Agency on Deafness*, 742

15   F.3d at 433 ("CNN could enable a captioning option for California visitors to its site, leave the

16   remainder unchanged, and thereby avoid the potential for extraterritorial application of the

17   [statute]"); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D.Cal.

18   2006) ("NFB ") (rejecting Commerce Clause challenge because  "Target could choose to make a

19   California-specific website" and even if Target changed "its entire Web site in order to comply

20   with California law, this does not mean that California is regulating out-of-state conduct").[7]

21   Finally, if this Court were to accept IMDb's Commerce Clause theory, almost every

22   California consumer protection applicable in an online context could be considered

23   unconstitutional.  Yet the Commerce Clause "is not a roving license for federal courts to decide

24   what activities are appropriate for state and local government to undertake, and what activities

---

[7] IMDb's unsupported, one-sentence assertion that this is "technologically unfeasible" (Decl. of Giancarlo Cairella ¶ 12) is conclusory and speculative, as is its claim that section 1798.83.5 will somehow require it to "modify its content in order to comply with each state's regulatory scheme."  Pl.'s Mot. at 10.  *See Greater Los Angeles Agency on Deafness*, 742 F.3d at 432-33 & n.9 (rejecting similar contentions).

12

must be the province of private market competition." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343 (2007).  This is particularly true in fields traditionally subject to state regulation, like consumer protection.  *Id.* at 344; *see SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 195 (2d Cir. 2007) ("The fact that an ordinary commercial transaction happens to occur in cyberspace does not insulate it from otherwise applicable state consumer protection laws.")

### C. Plaintiff will not succeed on its federal statutory claim because the immunity provided by section 230 of the CDA does not apply.

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties: 'No provider ... of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.'"  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (*Roommates*) (quoting 47 U.S.C. § 230(c) (footnotes omitted).  Yet "[t]his grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content."  *Id.* (quoting 47 U.S.C. § 230(f)(3)).

Even assuming IMDb qualifies as an "interactive computer service" and that section 1798.83.5 seeks to treat IMDb as a "publisher or speaker," which Defendant does not concede, IMDb has failed to show that it is not also an "information content provider."  On the contrary, the record shows that IMDb *is* an "information content provider" subject to liability.  IMDb does not simply "passively display" content created entirely by third parties.  *See Roommates*, 521 F.3d at 1162 ("If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content.")  Rather, it creates some of its content entirely on its own in the first instance.  *See* Compl. at 2 (alleging that only majority of relevant information, as opposed to all of it, is contributed by IMDb.com users).  And with respect to other content that may be added by third parties, the record shows that IMDb routinely monitors, updates, and edits for accuracy all of the information on its site (i.e., its an active

13

1    curator of the content).  *See id.* at 2 ("IMDb routinely and gladly updates information on

2    IMDb.com in order to correct verified inaccuracies.") & 6 ("IMDb.com maintains a 'Database

3    Content Team' that manually monitors third party contributions for accuracy, and has also

4    developed software to ensure that all of the information on IMDb is as accurate as possible.")

5    Cairella Decl. ¶ 6 (discussing "Database Content Team").

6        Accordingly, IMDb is an "information content provider" subject to liability for the content

7    it displays.  *See Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1225–26 (N.D. Cal. 2014)

8    (professional networking site LinkedIn is "information content provider" not entitled to CDA

9    immunity); *Cf. F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1195 (10th Cir. 2009) ("prototypical

10   service qualifying for this statutory immunity is an online messaging board (or bulletin board) on

11   which Internet subscribers post comments and respond to comments posted by others").

12   **II.    PLAINTIFF FAILS TO MEET THEIR BURDEN TO DEMONSTRATE IRREPARABLE HARM**

13       IMDb has not met its burden to demonstrate irreparable injury.  IMDb argues that "AB

14   1687 directly infringes IMDb's First Amendment rights" and that irreparable injury will result "if

15   it is required to submit to and comply with an unconstitutional law."  Pls.' Mot. at 13.  However,

16   as discussed above, the law does not implicate IMDb's free speech rights, and even if it did, it

17   survives the applicable level of scrutiny.  IMDb is correct that an alleged constitutional

18   infringement may alone constitute irreparable harm.  But where a constitutional claim is

19   unsupported and fails as a matter of law, which is the situation here, the alleged infringement is

20   "too tenuous" to support the requested relief.  *Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d

21   466, 472 (9th Cir. 1984).

22       Also, "Plaintiff's long delay before seeking a preliminary injunction implies a lack of

23   urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374,

24   1377 (9th Cir. 1985).  The Legislature passed AB 1687 in September of last year, and

25   section 1798.83.5 went into effect on January 1 of this year.  IMDb could have sought an

26   injunction at any time over the last four months if there was any urgency to the request.  Its

27   failure to do so speaks clearly to the lack of hardship to comply with the statute.  *See Kobell v.*

28   *Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n. 27 (3rd Cir.1984) ("[T]he district court may

14

1  legitimately think it suspicious that the party who asks to preserve the status quo through interim

2  relief has allowed the status quo to change through unexplained delay.").

3  **III.   THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST WEIGH AGAINST GRANTING**
   **PRELIMINARY RELIEF.**

4

5      IMDb cannot establish sufficient harm to outweigh the fact that "[a]ny time a State is

6  enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a

7  form of irreparable injury." *Maryland v. King*, 133 S.Ct. 1, 3 (2012) (Roberts, J., in chambers,

8  quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)

9  (Rehnquist, J., in chambers)).  Additionally, IMDb's claim of undue burden in complying with

10 the law lacks credibility, considering the preexistence of an entire Database Content Team,

11 manual monitoring of Web site content, and software monitoring.  *See* Compl. at 6.  Indeed,

12 IMDb touts its abilities to operate an online database that it describes as "the most comprehensive

13 and authoritative public source of information regarding the motion picture and television

14 industries, which is used by hundreds of millions of people worldwide."  Compl. at 2.

15     Finally, if this Court were to enjoin the law, it would harm those consumers who continue

16 to face age discrimination in the entertainment industry.  *See* Sen. Com. on Judiciary, Analysis of

17 Assem. Bill No. 1687 (2015-2016 Reg. Sess.) June 14, 2016, at 1; Assem. Com. on Privacy &

18 Consumer Protection, Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) May 3, 2016,

19 at 2.  While IMDb suggests that these are simply professional actors well-known to the public, it

20 also includes many lesser-known actors and other entertainment industry professionals who

21 struggle against age discrimination.

22                                    **CONCLUSION**

23     For the reasons set forth above, the Court should deny IMDb's motion.

24 Dated:  January 19, 2017                          Respectfully Submitted,

25                                                   */s/ Anthony R. Hakl*
                                                     ANTHONY R. HAKL
26                                                   Deputy Attorney General
                                                     *Attorney for Defendant*
27

28

                                          15

## CERTIFICATE OF SERVICE

Case Name:  **IMDb.com, Inc. v. Kamala**          No.    **3:16-cv-06535**
            **Harris**

I hereby certify that on <u>January 19, 2017</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 19, 2017</u>, at Sacramento, California.

_____                    _____
        Tracie L. Campbell                                          Signature
            Declarant

SA2016104639
12561078.doc