DOUGLAS E. MIRELL (Bar No. 94169)
dmirell@hmafirm.com
DILAN A. ESPER (Bar No. 178293)
desper@hmafirm.com
HARDER MIRELL & ABRAMS LLP
132 S. Rodeo Dr., Fourth Floor
Beverly Hills, CA 90212
Tel. (424) 203-1600
Fax (424) 203-1601

Attorneys for *Amici Curiae* Screen Actors Guild-American Federation of Television and Radio Artists and Association of Talent Agents

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IMDB.COM, INC., a Delaware corporation,

Plaintiff,

v.

XAVIER BECERRA, in his official capacity as Attorney General of the State of California,

Defendant.

No. 3:16-cv-06535-VC

**BRIEF OF SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS AND ASSOCIATION OF TALENT AGENTS AS *AMICI CURIAE* IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Date: February 16, 2017
Time: 10:00 a.m.
Location: San Francisco Courthouse
Courtroom 4, 17th Floor
450 Golden Gate Ave.
San Francisco, CA 94102
Judge: Hon. Vince Chhabria

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............ ii
I. INTEREST OF THE AMICI ............ 1
II. AGE DISCRIMINATION IN THE ENTERTAINMENT INDUSTRY IS A SIGNIFICANT PROBLEM. ............ 2
III. AB 1687 IS CONSTITUTIONAL. ............ 4
IV. AB 1687 IS NOT PREEMPTED BY 47 U.S.C. § 230. ............ 9
V. CONCLUSION ............ 10

# TABLE OF AUTHORITIES

*Cases*

*Airbnb Inc. v. City and County of San Francisco*, 2016 WL 6599821 (N.D. Cal., Nov. 8, 2016) ........ 6, 7

*Bamboo Bros. v. Carpenter*, 133 Cal.App.3d 116 (1982) ........ 8

*Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161 (7th Cir. 1974) ........ 5

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ........ 5

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ........ 9

*Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213 (11th Cir. 1982) ........ 7

*Goldin v. Public Utilities Commission*, 23 Cal.3d 638 (1979) ........ 7

*Huong Hoang v. IMDb.com, Inc.*, 599 Fed.Appx. 674 (9th Cir. 2015) ........ 9

*Murphy v. Matheson*, 742 F.2d 564, 568 (10th Cir. 1984) ........ 7

*Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1222 (N.D. Cal. 2014) ........ 9

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973) ........ passim

*Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991) ........ 6

*Town Tobacconist v. Kimmelman*, 453 A.2d 209 (N.J. Super. 1982) ........ 8

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) ........ 7

*Statutes*

47 U.S.C. § 230(c)(1) ........ 9

California Civil Code § 1798.83.5 ........ 1

*Other Authorities*

*Ageism in Entertainment Media*, News Activist (Nov. 25, 2016) (at http://newsactivist.com/en/articles/media-ethics-section-03002-fall-

2015/ageism-entertainment-media ) (viewed Jan. 23, 2017)............................3

Comprehensive Annenberg Report on Diversity in Entertainment at 2 (Feb. 22, 2016) (at http://annenberg.usc.edu/pages/~/media/MDSCI/CARDReport FINAL 22216.ashx ) (viewed Jan. 26, 2017)................................................................3

*Hollywood Ageism: Where Thirty Is the New Fifty*, World Woman News (Sep. 9, 2016) at http://www.worldwomanfoundation.com/hollywood-ageism-where-thirty-is-the-new-fifty/ (viewed Jan. 23, 2017).........................2

*IMDb Refuses To Comply With California's Age Discrimination Laws*, Forbes (Jan. 11, 2017) (at http://www.forbes.com/sites/legalentertainment/2017/01/11/amazon-owned-imdb-in-age-discrimination-battle-with-state-of-california/#3c53353231e4 ) (viewed Jan. 23, 2017)........................................4

Kathleen Antonia, *Bias and the Business of Show – Employment Discrimination in the "Entertainment" Industry*, Cultural Weekly (Jan. 4, 2017) (at http://www.culturalweekly.com/bias-and-the-business-of-show-employment-discrimination-in-the-entertainment-industry/) (viewed Jan. 23, 2017) ......................................................................3

Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") and the Association of Talent Agents ("ATA") hereby submit their *Amicus Curiae* brief in opposition to Plaintiff's motion for a preliminary injunction.

## I. <u>INTEREST OF THE AMICI</u>

SAG-AFTRA is one of the largest unions in the entertainment industry, representing over 160,000 media professionals including actors, announcers, journalists, television and radio personalities, recording artists, singers, stunt performers and others. SAG-AFTRA's mission is to organize all work done under its jurisdiction – including the negotiation of best wages, working conditions, and health and pension benefits; the preservation and expansion of its members' work opportunities; the vigorous enforcement of entertainment industry contracts; and the protection of its members against unauthorized use of their work. SAG-AFTRA enforces and espouses a vigorous policy and position against any form of invidious employment discrimination in the entertainment industry, and strives constantly to protect its members against all forms of employment discrimination.

SAG-AFTRA was the sponsor of Assembly Bill 1687 ("AB 1687"), now codified at Civil Code § 1798.83.5. SAG-AFTRA is in a unique position to defend the constitutionality of the statute. SAG-AFTRA receives discrimination complaints and grievances from its members and gathers information on age discrimination in the entertainment industry. SAG-AFTRA's sponsorship of AB 1687 arose from this institutional knowledge of common entertainment industry practices.

ATA is a Los Angeles-based nonprofit trade association comprised of over 100 licensed talent agencies in California. ATA's membership includes agencies of all sizes that represent the vast majority of working artists – including actors, directors, writers, and other artists in film, stage, television, radio, commercial, modeling, literary work, and other entertainment enterprises. Founded in 1937, the ATA proudly joins SAG-AFTRA in strongly supporting the California Attorney

General's opposition to Plaintiff's pending motion for preliminary injunction. Despite existing federal and state laws prohibiting age discrimination in employment, such discrimination continues to exist; it is facilitated through the public distribution of birthdates and age information via commercial online employment service providers. ATA believes that AB 1687 materially furthers the goal of eliminating age discrimination and, in so doing, corrects an injustice that can lead to the loss of employment for its agency members' artist clients.

## II. AGE DISCRIMINATION IN THE ENTERTAINMENT INDUSTRY IS A SIGNIFICANT PROBLEM.

AB 1687 addresses a rampant, pressing problem – the massive amount of age discrimination in hiring in the entertainment industry. While such age discrimination is illegal under state and federal anti-discrimination laws, it continues unabated.

Some actors have publicized this unfair treatment. For instance, when award-winning actress Maggie Gyllenhaal was turned down at age 37 for the part of the love interest of a 55-year-old actor, she spoke out. *Hollywood Ageism: Where Thirty Is the New Fifty*, World Woman News (Sep. 9, 2016) at http://www.worldwomanfoundation.com/hollywood-ageism-where-thirty-is-the-new-fifty/ (viewed Jan. 23, 2017) ("Although the actors grow . . . older, their leading ladies seem to be getting younger in age. This is especially evident with actors such as Harrison Ford, who is nineteen years older than fellow actress Virginia Madsen in the film Firewall. Similar age gaps exist in the careers of George Clooney, Denzel Washington, and Johnny Depp. Thus, leaving less opportunity for actresses of a similar age.").

Only 25.7 percent of female characters in film, television, and streaming video production are over 40 years old, as compared to 74.3 percent of male characters. Stacy L. Smith, et al., Inclusion or Invisibility? Comprehensive Annenberg Report on Diversity in Entertainment at 2 (Feb. 22, 2016) (at

http://annenberg.usc.edu/pages/~/media/MDSCI/CARDReport FINAL 22216.ashx ) (viewed Jan. 26, 2017).

While age discrimination that victimizes major actresses may grab the headlines, the problem goes far beyond top-billed stars. For instance, "[n]otwithstanding settlement of an age discrimination lawsuit in 2012, ... the employment rate of industry writers still declines sharply with age". Kathleen Antonia, *Bias and the Business of Show – Employment Discrimination in the "Entertainment" Industry*, Cultural Weekly (Jan. 4, 2017) (at http://www.culturalweekly.com/bias-and-the-business-of-show-employment-discrimination-in-the-entertainment-industry/) (viewed Jan. 23, 2017) (*citing* Darnell M. Hunt, *The 2014 Hollywood Writers Report: Turning Missed Opportunities Into Realized Ones*, at 28 (Writers Guild of America 2014).).

Age discrimination is also a significant problem in the hiring of film crews. "Young aspiring adults are more likely to be hired for a place in the film crew than those with years of experience. Directors nowadays want a fresh outlook on the lens, but not Peter Mark Richman. Richman was upset that younger people with in the media industry was favored over the older ones more qualified for a job...." *Ageism in Entertainment Media*, News Activist (Nov. 25, 2016) (at http://newsactivist.com/en/articles/media-ethics-section-03002-fall-2015/ageism-entertainment-media ) (viewed Jan. 23, 2017) (*citing* Bootie Cosgrove-Mather, *Fighting Ageism In Hollywood*, CBS News (Aug. 1, 2002).

The entertainment industry is replete with age discrimination. The special, intractable nature of this problem was brought to the attention of the California Legislature, resulting in the enactment of AB 1687. In seeking to deprive those who make employment decisions in the industry of the opportunity to engage in prohibited age discrimination, AB 1687 uses a statutory approach that has been

repeatedly upheld in the anti-discrimination context as well as in other contexts.[1]

## III. AB 1687 IS CONSTITUTIONAL.

AB 1687 is the latest in a long line of anti-discrimination laws which recognize that barring discriminatory conduct is insufficient by itself to prevent discrimination. It is often necessary to regulate solicitations that facilitate discriminatory conduct in order to effectively combat discrimination. Such laws are fully constitutional under the longstanding principle that speech which directly facilitates illegal transactions or conduct is unprotected by the First Amendment.

The leading case is *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973). In *Pittsburgh Press*, the city's Human Relations Commission barred the newspaper from publishing separate male and female want ads. The U.S. Supreme Court upheld the Commission's order. "Discrimination in employment is not only commercial activity, it is illegal commercial activity under the Ordinance." *Id.* at 388.

> The Commission and the courts below concluded that the practice of placing want ads for nonexempt employment in sex-designated columns did indeed 'aid' employers to indicate illegal sex preferences. The advertisements, as embroidered by their placement, signaled that the advertisers were likely to show an illegal sex preference in their hiring decisions. Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.

*Id.* at 389.

---

[1] It is notable that Plaintiff does not come to this Court with clean hands. Plaintiff has been deliberately and blatantly violating AB 1687, even though no injunction is in place enjoining enforcement of Civil Code § 1798.83.5. *See* Bryan Sullivan, *IMDb Refuses To Comply With California's Age Discrimination Laws*, Forbes (Jan. 11, 2017) (at http://www.forbes.com/sites/legalentertainment/2017/01/11/amazon-owned-imdb-in-age-discrimination-battle-with-state-of-california/#3c53353231e4 ) (viewed Jan. 23, 2017); Plaintiff's Ciarella Decl., ¶¶ 12-13. Plaintiff's motion is also barred by laches. Plaintiff did not seek a TRO; instead, it waited several months after AB 1687 was signed into law by Governor Brown on September 24, 2016, to bring its preliminary injunction motion.

Thus, *Pittsburgh Press* stands for the proposition that not only may a government bar discriminatory conduct, but may also prohibit certain expression in order to make the anti-discrimination law effective – specifically, solicitations that facilitate discriminatory conduct. [2]

*Pittsburgh Press* is not limited to explicitly segregated want ads in the newspapers. Based on *Pittsburgh Press*, courts uphold anti-discrimination laws that regulate a wide variety of expression that facilitates discriminatory conduct. Closely analogous to the case at bar is *Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161 (7th Cir. 1974). In *Barrick Realty*, the city enacted an ordinance barring **all** "For Sale" signs on residential property, in an attempt to prevent panic selling that could lead to resegregation. Despite the fact that the ordinance barred truthful speech (after all, such homes were for sale), the ordinance was upheld because it was directed toward expression that facilitated discrimination:

> The history of the ordinance banning 'For Sale' signs shows that it was aimed at panic selling and that its purpose was to halt resegregation. It was passed in response to the presence of numerous 'For Sale' signs in some white neighborhoods, which caused whites to move en masse and blacks to replace them. There is evidence in the record that some real estate brokers who placed these signs (not including any plaintiffs) actively encouraged resegregation by unlawfully urging whites to sell quickly before they had black neighbors and lower property values.

*Id.* at 163-64.

---

[2] *Amici* First Amendment Scholars cite incitement cases such as *Brandenburg v. Ohio*, 395 U.S. 444 (1969), to imply that there is a general rule that speech which facilitates illegal conduct may not be regulated by the government. However, *Brandenburg* involves core political speech and is justified by the often tenuous asserted connection between political speech and violent or illegal conduct. *Pittsburgh Press* deals with the very different issue of discrimination, and permits the regulation of non-political expression that facilitates illegal discriminatory conduct. *Brandenburg* clearly does not preclude regulation of speech that facilitates illegal conduct outside the context of political expression. That brief's conclusory assertion (p. 7) that "IMDb does not itself post, or aid in posting, age discriminatory advertisements" is belied by the very nature of the site itself.

Thus, it does not matter that AB 1687 regulates truthful communications or that some disclosures of particular persons' ages will not result in discrimination. So long as the communication of the age of persons in the entertainment industry writ large facilitates illegal age discrimination, such expression may be regulated consistent with the First Amendment.[3]

In *Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991), the Court held that the First Amendment permitted the government, through the Fair Housing Act, to bar housing advertisements featuring white models for homes in segregated white neighborhoods and black models for homes in black neighborhoods. "The complaint alleges that the ads in question discourage black people from pursuing housing opportunities by conveying a racial message in much the same way that the sex-designated columns in Pittsburgh Press furthered illegal employment discrimination. The Times's publication of real estate advertisements that indicate a racial preference is, therefore, not protected commercial speech." *Id.* at 1003.

More recently, the *Pittsburgh Press* rule has been applied to the online bed and breakfast service Airbnb.com. In *Airbnb Inc. v. City and County of San Francisco*, 2016 WL 6599821 (N.D. Cal., Nov. 8, 2016), Judge Donato held that the City could constitutionally ban Airbnb from accepting any fee from an advertiser of an unregistered rental property, because such advertisements facilitate illegal

---

[3] *Amici* First Amendment Scholars argue that because it may be possible in some states to obtain birth dates through complicated and inconvenient procedures such as a search of public records, this means that any law that restricts the dissemination of birth dates on the Internet is unconstitutional. *Amici* cite no case with such a broad holding. The only "authority" for that broad statement was a treatise written by one of the scholars who joined the brief; the cases cited by *amici* all involve information that was well publicized, such as information contained in court records of publicized trials). Further, this "rule" would conflict with *Pittsburgh Press* and its progeny, which hold that speech which facilitates discrimination may be regulated. Making age information available to a determined person who goes to the proper government office and retrieves it from the archives is unlikely to facilitate age discrimination—making the same information available to anyone with a computer and an Internet connection will.

Similarly, *amici*'s argument that Google searches reveal birthdates of actors (including non-A list actors) does not show that AB 1687 will be ineffective, but rather only that Plaintiff has been effective at disseminating that information to the public. People who enter the entertainment industry after AB 1687 takes effect (especially off-screen talent, as well as less well known actors whose ages do not receive regular publicity) will be its beneficiaries, as their birthdates will not become public knowledge nor be accessible by Google-type searches in the first place.

rentals. *Id.* at *8. In doing so, the Court specifically rejected Airbnb's argument that *Pittsburgh Press* only applied if the advertisement on its face was unlawful. *Id.*

*Pittsburgh Press* has been applied in a wide array of circumstances. For instance, in *Goldin v. Public Utilities Commission*, 23 Cal.3d 638 (1979), the California Supreme Court upheld a rule requiring that telephone utilities deny service to persons who utilize the telephone for illegal purposes. *Goldin* involved an illegal escort service that utilized numerous telephone numbers to facilitate the business and to provide prostitutes for its clients. The Court recognized that commercial speech is ordinarily protected by the First Amendment, but stated that "when such communication proposes, discusses, or is intended to encourage or facilitate a commercial transaction [w]hich is itself illegal, the principle established in the *Pittsburgh Press* case is applicable." *Id.* at 657.

A line of cases involving head shops, which sell drug paraphernalia (such as bong pipes), also confirms the applicability of the *Pittsburgh Press* principle. In *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982), the U.S. Supreme Court upheld the constitutionality of a statute that prohibited the sale of certain drug paraphernalia with or within close proximity to literature encouraging the use of illegal drugs. The Court accepted that the statute prohibited the communication of information promoting or encouraging drug use, but stated "if that activity is deemed 'speech,' then it is speech proposing an illegal transaction, which a government may regulate or ban entirely" under *Pittsburgh Press*. *Id.* at 496.

Pursuant to *Pittsburgh Press* and *Hoffman Estates*, a number of head shop laws that restrict various forms of expression have been upheld on the grounds that such expression facilitates illegal conduct. *Murphy v. Matheson*, 742 F.2d 564, 568 (10th Cir. 1984) (advertisements of head shop "are not constitutionally protected in this instance because the statute is directed at commercial activity promoting or encouraging illegal drug use"); *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213, 1217 (11th Cir. 1982) ("[T]he government may regulate

or ban entirely commercial speech related to illegal activity"); *Town Tobacconist v. Kimmelman*, 453 A.2d 209, 216 (N.J. Super. 1982) ("The statute is thus directed only to advertisements which are known to have the purpose of aiding and promoting violations of the Controlled Dangerous Substances Act"); *Bamboo Bros. v. Carpenter*, 133 Cal.App.3d 116, 131 (1982) ("If the advertisement, as in the instant case, is encouraging an illegal activity, the principle established by *Pittsburgh Press* is applicable").

Simply put, AB 1687 does nothing more than what numerous other such statutes have done in the past – *i.e.*, restrict communication that directly facilitates discrimination. Moreover, it does so in the context of an industry that has extensive age discrimination which has persisted despite enforcement efforts. Thus, if AB 1687 restricts speech at all, it restricts is clearly unprotected by the First Amendment.

*Amici* Electronic Frontier Foundation *et al*. and *amici* First Amendment Scholars argue that enforcement of AB 1687 would stifle debate about age discrimination by depriving participants in that debate of information about performers' ages. This is akin to arguing that *Pittsburgh Press* should have struck down the anti-discrimination regulation and permitted the discriminatory want ads so that the public would know the number of discriminatory want ads. It is perverse to permit discrimination simply to inform the public that such discrimination is taking place.

Similarly, *amici* First Amendment Scholars' argument about the supposed value of knowing the age of people who work in the entertainment industry cannot be taken seriously.[4] They characterize entertaining, satisfying curiosity, and educating as "valuable uses" of people's (including non-celebrities') private

---

[4] Again, this argument cites no case authority and relies solely on a law review article written by one of the scholars who signed onto the brief.

information about their age. *Amici* thereby elevate the interest in Hollywood gossip above that of preventing age discrimination. This Court should not follow their lead.

Finally, *amici*'s "slippery slope"-type concern that the government could also regulate information related to other protected classes on commercial websites is misplaced. Gender, race, and national origin information is rarely kept private, whereas people go to great lengths not to disclose their ages. Even assuming a legislature passed such a statute, it would present far different issues than AB 1687.

## IV. AB 1687 IS NOT PREEMPTED BY 47 U.S.C. § 230.

Section 230 of the Communications Decency Act immunizes interactive computer services from liability for the publication of information provided by another information content provider. 47 U.S.C. § 230(c)(1). Plaintiff may not claim this immunity with respect to the ages posted on its website because it curates, edits, and provides the information. Plaintiff has already admitted this in other litigation. See *Huong Hoang v. IMDb.com, Inc.*, 599 Fed.Appx. 674, 676 (9th Cir. 2015) (in response to privacy claim by actress, IMDb admitted it used her subscription information to obtain and post her age, claiming this was expressly authorized by her subscriber agreement).

Because Plaintiff curates, edits, and provides age information for the website, it is itself an information content provider and cannot claim Section 230 immunity. Instead, Plaintiff's operations are analogous to those of Roommates.com and LinkedIn.com, both of which have been held to be information content providers ineligible for Section 230 immunity. *See, e.g., Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008); *Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1222, 1225-26 (N.D. Cal. 2014).

## V. CONCLUSION

For the foregoing reasons, as well as those presented by the Attorney General of the State of California, SAG-AFTRA and ATA jointly urge this Court to deny Plaintiff's motion for a preliminary injunction in its entirety and uphold the constitutionality of the important age discrimination protections found in AB 1687.

DATED: January 26, 2017.

Respectfully submitted,

HARDER MIRELL & ABRAMS LLP

By: ______________________________
Douglas E. Mirell
Attorneys for *Amici Curiae* Screen Actors Guild-American Federation of Television and Radio Artists and Association of Talent Agents