1  John C. Hueston, State Bar No. 164921
   jhueston@hueston.com
2  Moez M. Kaba, State Bar No. 257456
   mkaba@hueston.com
3  Adam Olin, State Bar No. 298380
   aolin@hueston.com
4  HUESTON HENNIGAN LLP
   523 West 6th Street, Suite 400
5  Los Angeles, CA 90014
   Telephone:    (213) 788-4340
6  Facsimile:    (888) 775-0898

7  Attorneys for Plaintiff
   IMDb.com, Inc.

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  IMDB.COM, INC., a Delaware corporation,    Case No. 3:16-cv-06535-VC

13              Plaintiff,                       **MOTION FOR SUMMARY JUDGMENT**

14       vs.                                    Judge:      Hon. Vince Chhabria

15  XAVIER BECERRA, in his official capacity as  Date:       October 26, 2017
    Attorney General of the State of California,  Time:       10:00 AM
16                                               Location:   Courtroom 4 - 17th Floor
                Defendant.
17

18  SCREEN ACTOR'S GUILD-AMERICAN
    FEDERATION OF TELEVISION AND
19  RADIO ARTISTS,

20              Defendant-Intervenor.

21

22

23

24

25

26

27

28

1

## **<u>APPLICATION</u>**

2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on October 26, 2017 in Courtroom 4 of the Honorable

4 Vince Chhabria at the United States District Court for the Northern District of California, 17th

5 Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff IMDb.com, Inc. ("IMDb")

6 shall and hereby does move the Court pursuant to Federal Rule of Civil Procedure 56 for **<u>summary</u>**

7 **<u>judgment</u>** against Defendant Xavier Becerra, Attorney General of California, in his official

8 capacity and Defendant-Intervenor Screen Actor's Guild-American Federation of Television and

9 Radio Artists ("SAG-AFTRA").[1]

10      This motion is based on this notice of motion and supporting memorandum of points and

11 authorities; the previously filed affidavits of Giancarlo Cairella and Moez M. Kaba; and any other

12 written or oral evidence or argument as may be presented at or before the time this motion is taken

13 under submission by the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27 [1] Pursuant to discussions with Defendants and the Court, Plaintiff here seeks summary judgment solely on its claim that AB 1687 violates the First Amendment as an impermissible content-based

28 regulation.  IMDb reserves its arguments regarding its Commerce Clause, Communications Decency Act, and remaining First Amendment claims.

1

## TABLE OF CONTENTS

2

Page

3

INTRODUCTION ........................................................................................................ 1

4

BACKGROUND ......................................................................................................... 2

5

ARGUMENT .............................................................................................................. 4

6

I.    Legal Standard ................................................................................................... 4

7

II.   AB 1687 Censors the Publication of Truthful Information in the Public
      Interest ............................................................................................................... 4

8

9

III.  AB 1687 Is a Content-Based Restriction that Fails Strict Scrutiny ................. 6

10

      A.    AB 1687 Is Not "Actually Necessary" To Combat Age
            Discrimination ......................................................................................... 7

11

      B.    AB 1687 Is Unconstitutionally Under-Inclusive .................................... 8

12

      C.    AB 1687 Is Unconstitutionally Over-Inclusive ...................................... 10

13

IV.   Defendants' Arguments Do Not Save AB 1687 ............................................... 11

14

      A.    There Is No First Amendment "Facilitation" Exception ........................ 11

15

      B.    IMDb Does Not Incite Discrimination .................................................... 12

16

      C.    AB 1687 Does Not Merely Regulate a Contractual Relationship .......... 12

17

CONCLUSION ........................................................................................................... 13

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Airbnb, Inc. v. City & Cnty. of San Francisco*,
    217 F. Supp. 3d 1066 (N.D. Cal. 2016) .......................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 4

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ..................................................................................................... 7, 11

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) ........................................................................................... 6

*Brandenburg v. Ohio*,
    395 U.S. 444 (1969) ......................................................................................................... 12

*Carmen v. San Francisco Unified Sch. Dist.*,
    237 F.3d 1026 (9th Cir. 2001) ........................................................................................... 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................................... 4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) ........................................................................................................... 6

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir. 2011) ........................................................................................... 10

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975) ................................................................................................. 1, 4, 10

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ............................................................................................. 6

*Keenan v. Allen*,
    91 F.3d 1275 (9th Cir. 1996) ............................................................................................. 4

*McCullen v. Coakley*,
    134 S. Ct. 2518 (2014) ....................................................................................................... 6

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,
    413 U.S. 376 (1973) ......................................................................................................... 11

*Reed v. Town of Gilbert, Ariz.*,
    135 S. Ct. 2218 (2015) ............................................................................................. 1, 7, 8, 9

*Republican Party of Minn. v. White*,
    536 U.S. 765 (2002) ........................................................................................................... 9

*Smith v. Daily Mail Publ'g Co.*,
    443 U.S. 97 (1979) ........................................................................................................ 1, 4

1

<u>TABLE OF AUTHORITIES (cont.)</u>

2

Page(s)

3

*Snyder v. Phelps*,
    562 U.S. 443 (2011)...........................................................................................6

4

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..............................................................................5, 6, 7, 12

5

6

*Stevenson v. Superior Court*,
    941 P.2d 1157 (Cal. 1997)..............................................................................10

7

*The Florida Star v. B.J.F.*,
    491 U.S. 524 (1989).......................................................................................1, 4

8

9

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002)...........................................................................................7

10

*United States v. Alvarez*,
    132 S. Ct. 2537 (2012)....................................................................................1, 7

11

12

*Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)...........................................................................................6

13

*Valle del Sol, Inc. v. Whiting*,
    709 F.3d 808 (9th Cir. 2013) ...........................................................................11

14

*Village of Schaumburg v. Citizens for a Better Environment*,
    444 U.S. 620 (1980)...........................................................................................8

15

16

**Statutes**

17

Cal. Civ. Code § 1798.83.5.................................................................................3, 4, 13

18

Cal. Gov. Code § 12926(b)....................................................................................10

19

**Treatises**

20

Jackie Fields, *Ellen Pompeo Reveals Her Age Was the Reason She Stayed on Grey's
    Anatomy: "I Knew My Clock Was Ticking in Hollywood,"* People Magazine ...................5

21

Stacy L. Smith, et al., *Inclusion or Invisibility? Comprehensive Annenberg Report
    on Diversity in Entertainment* (Feb. 22, 2016) .......................................................5

22

23

24

25

26

27

28

1

**INTRODUCTION**

2   "[T]he First Amendment means that government has no power to restrict expression because

3   of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 567 U.S. 709,

4   716 (2012). Yet California has taken the extraordinary step of enacting an "outright restriction on

5   the publication of certain non-commercial information," which completely prohibits IMDb from

6   communicating truthful information to its millions of users. Dkt. No. 73 (Order Denying Mot. for

7   Discovery) at 3. What's more, the age-related information California targets for censorship is in the

8   public interest and an important part of public discourse. In passing AB 1687, California asserted

9   that it was seeking to combat age discrimination in the entertainment industry. But the state cannot

10  rely only on the legitimacy or virtue of its interest. Rather, to impose a content-based restriction on

11  speech, the state must establish that the regulation is narrowly tailored to meet the interest asserted.

12  *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). Defendants cannot do so here for

13  myriad reasons.

14       *First*, the law is unconstitutional because it censors the publication of truthful information

15  that is in the public interest. The Supreme Court has uniformly struck down such laws regardless of

16  the interest asserted by the state in defense of the laws. *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420

17  U.S. 469, 495 (1975); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979); *The Florida Star v.*

18  *B.J.F.*, 491 U.S. 524, 535 (1989).

19       *Second*, AB 1687 is not narrowly tailored because the state cannot prove that it is "actually

20  necessary" to serve its goal of combating age discrimination. California could achieve its goal of

21  combatting age discrimination by, for example, enforcing existing anti-discrimination laws, or by

22  imposing more significant penalties on those who discriminate. Although censorship of IMDb may

23  be a politically expedient response to SAG-AFTRA's demands on the legislature, restricting speech

24  must be a last resort and only go so far as is necessary. Further, AB 1687 is unconstitutionally over-

25  inclusive because it applies equally to producers, directors, casting agents, and various other

26  entertainment professionals of all ages, many of whom face no realistic risk of age discrimination

27  beyond that of the general public. The law is also unconstitutionally under-inclusive, because it does

28

1   nothing to restrict the ready availability of the same factual age information from other public

2   sources.

3          Perhaps recognizing that AB 1687 clearly violates long-standing First Amendment

4   jurisprudence, Defendants have invented theories for why the First Amendment does not apply here.

5   Defendants erroneously argue that IMDb's speech "facilitates" discrimination, that IMDb's speech

6   "incites" illegal discrimination, or that AB 1687 merely "regulates" a contractual relationship.  Not

7   only do these claims lack any factual basis, they are wrong as a matter of law.

8          IMDb does not dispute that age discrimination should be rooted out in the entertainment

9   industry and beyond.  But AB 1687 does not in any meaningful way advance that goal, and it certainly

10  does not do so in a way that complies with the First Amendment.  Thus, AB 1687 is unconstitutional.

11                                  **<u>BACKGROUND</u>**

12         <u>IMDb.com and IMDbPro.com</u>

13         IMDb maintains the world's largest, publicly-available online database of information related

14  to films, television programs, and video games.  Dkt. No. 17 (Cairella decl.) at ¶ 3.  IMDb's public

15  website, IMDb.com, includes information on cast, production crew, fictional characters, biographies,

16  plot summaries, trivia, and reviews.  *Id.*  IMDb provides a breadth of information on the

17  entertainment industry that is unparalleled by any other source.  *Id.*  Because of IMDb's encyclopedic

18  content, IMDb.com is one of the world's most visited sites.  *Id.* ¶ 4.  As of January 4, 2017,

19  IMDb.com was estimated to be the 54th most visited website in the world according to Alexa.com.

20  *Id.*  Every month, more than 250 million worldwide unique visitors access IMDb.com to view its

21  pages, including more than six million profiles of cast and crew members, and more than three

22  million title pages for movie, television, and entertainment programs.  *Id.*

23         Not only do users access IMDb to view content, but users may also submit information to the

24  website.  From its inception, IMDb has relied on collaborative efforts from around the world to

25  accurately maintain its database.  *Id.* ¶ 5.  Similar to Wikipedia, IMDb.com users are able to edit the

26  database in order to keep IMDb.com up to date.  *Id.*  Members of the public add titles to an

27  entertainment industry professional's profile, add iconic quotes from a title, or edit the demographic

28  information (including ages and dates of birth) of entertainment professionals.  *Id.*

1    In 2002, IMDb developed a separate service for entertainment industry professionals known

2    as IMDbPro.  *Id.* ¶ 7.  Instead of being a public-facing site like IMDb, IMDbPro is designed to assist

3    industry professionals in finding employment opportunities.  *Id.*  On IMDbPro, casting directors and

4    agents are able to access subscribers' profiles in order to view their resumes, photographs, demo

5    reels, and other information.  *Id.* ¶ 8.  IMDbPro subscribers manage their own profiles and have

6    control over content, *including whether to publicly display their birthdates or ages* on IMDbPro.  *Id.*

7    That is, IMDbPro subscribers have unfettered control over whether to list their age-related

8    information on their IMDbPro profiles.  *Id.*

9    <u>AB 1687</u>

10    In September 2016, the California Legislature passed, and Governor Brown signed, AB 1687,

11    which went into effect on January 1, 2017.  *See* Cal. Civ. Code § 1798.83.5.  The law provides that,

12    upon demand by a subscriber, a "commercial online entertainment employment service provider"

13    may not " [p]ublish or make public the subscriber's date of birth or age information in an online

14    profile of the subscriber."  *Id.* § (b)(1).  This provision requires IMDbPro, upon demand, to remove

15    the birthdates and ages of *any* entertainment industry professionals (including the directors,

16    producers, and casting personnel who make hiring decisions) who subscribe to IMDbPro.  More

17    significantly, the law was crafted to require the removal of this age information from any "online

18    profile of the subscriber" posted publicly on a "companion" website.  *Id.* § (c).  In other words, the

19    statute requires IMDb to remove age information not only from IMDbPro (which subscribers already

20    can do on their own), *but also from the public IMDb.com site*.

21    AB 1687 was passed at the urging of SAG-AFTRA, who sponsored the legislation and

22    aggressively lobbied for its passage.  Dkt. No. 20 (Answer to Complaint in Intervention by SAG-

23    AFTRA) at ¶ 4; Dkt. No. 18 (Kaba decl.), Ex. 5 at 2, 4.  The legislative history of AB 1687 confirms

24    that California specifically passed the law to target IMDb.[2]  *See* Dkt. No. 18, Ex. 6, at 4-6; Dkt. No.

25    73 at 2.  Moreover, California was aware of the obvious First Amendment concerns raised by the

---

[2]  Defendants do not dispute that the law was drafted to specifically target IMDb or that the law
applies to the public-facing IMDb website.  *See, e.g.*, Dkt. No. 57 (Hearing Transcript, Motion for
Preliminary Injunction) at 32:15-32:16 ("[IMDb] is, in fact, the bible for this industry, and that's
why it has been targeted . . .").

1  law.  For example, in a section of bill analysis titled "Potential impact to free speech," the Chair of

2  the Senate Judiciary Committee warned that AB 1687 would "collaterally impact Web sites that

3  disclose sensitive age information in an online profile, even if such information was obtained outside

4  the subscriber-service provider relationship or pre-dated that relationship."  Dkt. No. 18, Ex. 6 at 5-

5  6.  Rather than heed this warning, the legislature pressed ahead with AB 1687.  *See* Cal. Civ. Code

6  § 1798.83.5(c).

7       IMDb filed this lawsuit shortly after AB 1687's enactment.  On February 22, 2017, the Court

8  granted a preliminary injunction against enforcement of the law.  *See* Dkt. No. 54 (Order Granting

9  Mot. for Preliminary Injunction).

10                                              **ARGUMENT**

11  **I.      Legal Standard**

12       Summary judgment is appropriate where there is "no genuine issue as to any material fact

13  and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

14  317, 322 (1986).  A party seeking summary judgment has the initial burden of "informing the district

15  court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

16  to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

17  demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  To withstand a motion for

18  summary judgment, the non-movant must then show that there are genuine factual issues which can

19  only be resolved by the trier of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The

20  nonmoving party has the burden of identifying with reasonable particularity the evidence that

21  precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the

22  nonmoving party fails to do so, the district court may properly grant summary judgment in favor of

23  the moving party.  *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th

24  Cir. 2001).

25  **II.     AB 1687 Censors the Publication of Truthful Information in the Public Interest**

26       As a threshold matter, the Supreme Court has consistently held that "state action to punish

27  the publication of truthful information seldom can satisfy constitutional standards."  *Daily Mail*

28  *Publ'g Co.*, 443 U.S. at 102; *see also Cox Broad. Corp.*, 420 U.S. at 495; *The Florida Star*, 491 U.S.

at 535; Dkt. No. 24 (Brief of Amici Curiae First Amendment Scholars and Legal Organizations). Even laws which seek to advance compelling goals, such as prohibiting the publication of the name of a rape victim, as in *Cox Broadcasting Corporation* and *The Florida Star*, or prohibiting the publication of the name of a juvenile defendant, as in *Smith*, fail the First Amendment's demanding scrutiny. AB 1687, which seeks to curtail truthful speech based on purported fear of how others will use that factual information, is no different.

The information IMDb publishes is truthful. Defendants have not argued that IMDb is posting incorrect age information, and that is plainly not the problem AB 1687 is designed to ameliorate. To the contrary, the evil the law claims to address is revealing a professional's true age, which might facilitate discrimination. Importantly, AB 1687 does not prohibit IMDb from posting inaccurate information; it prohibits IMDb from posting *any* factual age information, regardless of accuracy.

That information is distinctly within the public interest. Factual information such as age or birthdate is at the heart of public discourse. "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

It is impossible to have a meaningful conversation about age discrimination in the entertainment industry without the availability of accurate information on actors' ages. For example, information on Ellen Pompeo's age throughout her career on *Grey's Anatomy* is part of the important discussion of age discrimination in female roles and the trajectory of women's careers in Hollywood.[3] Revealingly, the very study that SAG-AFTRA has cited to demonstrate the problem of age discrimination relies heavily on IMDb.com's data. Dkt. No. 37 (Brief of SAG-AFTRA in Opposition to Mot. for Preliminary Injunction) at 2-3 (citing Stacy L. Smith, et al., *Inclusion or Invisibility? Comprehensive Annenberg Report on Diversity in Entertainment* (Feb. 22, 2016)).

---

[3] Jackie Fields, *Ellen Pompeo Reveals Her Age Was the Reason She Stayed on Grey's Anatomy: "I Knew My Clock Was Ticking in Hollywood,"* People Magazine, available at:
http://people.com/style/ellen-pompeo-reveals-her-age-was-the-reason-she-stayed-on-greys-anatomy-i-knew-my-clock-was-ticking-in-hollywood/

1    Moreover, apart from the discussion of age discrimination, age is often an important aspect

2    of coverage of the trajectory of an actor's career and his or her accomplishments.  For example, the

3    fact that Orson Welles was 26 years old when he made *Citizen Kane* contributes to our understanding

4    of that work and his career.  So too is our understanding of the extended careers of directors like

5    Michelangelo Antonioni, who directed his last film at 91, informed by their ages and experiences.

6    Accordingly, IMDb's commitment to publishing, and not censoring, factual age information is

7    essential to an "uninhibited, robust, and wide-open" discussion on the important public issue of age

8    discrimination and an uncensored discussion of the entertainment industry.  *Snyder v. Phelps*, 562

9    U.S. 443, 452 (2011).

10   **III.     AB 1687 Is a Content-Based Restriction that Fails Strict Scrutiny**

11   "A regulation is content-based if . . . by its very terms, [it] singles out particular content for

12   differential treatment."  *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc); *see*

13   *also McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014) (statute is content-based if government must

14   "examine the content of the message that is conveyed to determine whether a violation has

15   occurred").  AB 1687 is content-based because it prohibits speech *only* if it contains age information.

16   There can be no serious dispute on this point.  Indeed, this Court has already concluded that AB 1687

17   is a content-based regulation.  Dkt. No. 54 at 1 ("This is a restriction of non-commercial speech on

18   the basis of content."); Dkt. No. 73 at 3 ("The statute does not merely restrict the time, place, or

19   manner in which people may express themselves; it is an outright restriction on the publication of

20   certain non-commercial information.").[4]

21   _____

22   [4] As this Court has already held, AB 1687 does not target "commercial speech."  *See* Dkt. No. 54

23   at 1 ("[AB 1687] is a restriction of non-commercial speech on the basis of content.").  Commercial
     speech is speech that does "no more than propose a commercial transaction," *Va. Pharmacy Bd. v.*
     *Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976), or speech that is "related solely to

24   the economic interests of the speaker and its audience," *Cent. Hudson Gas & Elec. Corp. v. Pub.*
     *Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  Factual information unconnected to a business

25   transaction or advertisement is not commercial speech.  *See Dex Media West, Inc. v. City of Seattle*,
     696 F.3d 952, 956-57 (9th Cir. 2012) ("telephone listings and community information" in

26   telephone directories were not commercial speech).  Factual age and birthdate information on
     IMDb.com, unconnected to any commercial transaction or advertisements, is not commercial

27   speech by any definition.  But even if such information were deemed commercial speech, AB 1687
     would still be unconstitutional because it does not "directly advance[] a substantial government

28   interest," *Sorrell*, 564 U.S. at 571-72, and is "more extensive than necessary to serve that interest,"

1    Content-based regulations are "presumed invalid" and "the Government bear[s] the burden
2    of showing their constitutionality." *Alvarez*, 567 U.S. at 716-17. Thus, the government bears the
3    burden of demonstrating that such a law satisfies strict scrutiny. *Town of Gilbert*, 135 S. Ct. at 2226.
4    This requires a showing that the regulation is "narrowly tailored to serve compelling state interests."
5    *Id.* "In the ordinary case it is all but dispositive to conclude that a law is content-based . . . ." *Sorrell*,
6    564 U.S. at 571. To be narrowly tailored and overcome the presumption of invalidity, a law must be
7    "actually necessary" to achieve its goal. *Alvarez*, 567 U.S. at 725. A law may not be over-inclusive,
8    sweeping too broadly by proscribing speech that does not affect the law's stated purpose, or under-
9    inclusive, by failing to limit speech that would otherwise undermine the law's stated purpose. IMDb
10   agrees that combating age discrimination is a compelling state interest. But AB 1687 fails strict
11   scrutiny because it is not narrowly tailored to accomplish that goal.

12       **A.     AB 1687 Is Not "Actually Necessary" To Combat Age Discrimination**

13       The government's restriction of speech must be "actually necessary" to achieve its stated
14   purpose. *Alvarez*, 567 U.S. at 725; Dkt. No. 54 at 1 ("[T]he burden is on the government to show
15   that the restriction is 'actually necessary' to serve a compelling government interest."). Defendants
16   cannot satisfy that showing. Instead, Defendants fail to establish that enforcement of California's
17   existing anti-discrimination laws will not adequately combat age discrimination.

18       Unsurprisingly, "[t]he normal method of deterring unlawful conduct is to impose an
19   appropriate punishment on the person who engages in it," not to suppress truthful information.
20   *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001); *id.* at 529-30 ("[I]t would be quite remarkable to hold
21   that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by
22   a non-law-abiding third party."); *Sorrell*, 564 U.S. at 577 ("Those who seek to censor or burden free
23   expression often assert that disfavored speech has adverse effects. But the fear that people would
24   make bad decisions if given truthful information cannot justify content-based burdens on speech.")

25

26

27   *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). Attempting to achieve "policy
     objectives through the indirect means of restraining certain speech by certain speakers" "does not
     advance [interests] in a permissible way," whether under a strict scrutiny standard or a commercial
28   speech standard. *Sorrell*, 564 U.S. at 577; *id.* at 571 (explaining that the "outcome is the same
     whether a special commercial speech inquiry or stricter form of judicial scrutiny is applied").

1    (internal quotation marks omitted).  For example, in *Village of Schaumburg v. Citizens for a Better*

2    *Environment*, 444 U.S. 620 (1980), the village enacted an ordinance that prohibited door-to-door

3    solicitation for any charitable organization that did not use at least 75% of its receipts for "charitable

4    purposes."  *Id.* at 622.  The purpose of the ordinance was primarily to prevent fraud by groups that

5    were for-profit enterprises representing themselves as charitable organizations.  *Id.* at 636-37.  The

6    Court struck down the ordinance as unconstitutional under the First Amendment, explaining that the

7    "Village's legitimate interest in preventing fraud can be better served by measures less intrusive than

8    a direct prohibition on [speech].  Fraudulent misrepresentations can be prohibited and the penal laws

9    used to punish such conduct directly."  *Id.* at 637.

10          Individual actors, as well as the Attorney General, may already seek redress in court against

11   those who engage in unlawful age discrimination.  As in *Village of Schaumburg*, California must

12   make use of less intrusive methods than a direct censorship of speech.  Dkt. No. 54 at 2 ("And even

13   if restricting publication on this one website could confer some marginal antidiscrimination benefit,

14   there are likely more direct, more effective, and less speech-restrictive ways of achieving the same

15   end.").  The Attorney General must also demonstrate that California has already attempted to use its

16   ample enforcement powers, including various existing statutes proscribing age discrimination, and

17   that these measures are insufficient.  As the Court has already recognized, "the government fails to

18   explain why more vigorous enforcement of those laws would not be at least as effective at combatting

19   age discrimination as removing birthdates from a single website."  *Id.*  On that basis alone, AB 1687

20   is unconstitutional.

21          **B.      AB 1687 Is Unconstitutionally Under-Inclusive**

22          To be narrowly tailored, a law may not be under-inclusive by failing to limit speech that, if

23   allowed to continue, would undermine the law's stated purpose.  *Town of Gilbert*, 135 S. Ct. at 2231-

24   32.  The Attorney General cannot make this showing.

25          Even were the government able to show that AB 1687 was actually necessary to combat age

26   discrimination, AB 1687 is so under-inclusive as to render it ineffective.  AB 1687 allows all speakers

27   other than IMDb to continue publishing the same age-related factual information that allegedly

28   causes the discrimination the law purportedly is designed to prevent.  AB 1687 does nothing to

1   address the myriad other sources of age information, including Wikipedia, Google, Microsoft (Bing),

2   Apple (Siri), Facebook fan pages, entertainment magazines, twitter, and newspapers, which are

3   widely and readily accessible as alternative sources of age information.  *See* Dkt. No. 17 at ¶ 10.

4   Defendants cannot establish, and it is nonsensical to believe, that a casting director intent on

5   discriminating would simply stop trying if the information were not available on IMDb.com.[5]

6   AB 1687's failure to address the publication of age information by other sources, as well as its failure

7   to demonstrate that users will not turn to any other sources for this widespread factual information,

8   is fatal under strict scrutiny.

9          The Supreme Court's decision in *Town of Gilbert* is instructive.  There, a town enacted an

10  ordinance that severely restricted the use of directional signs, for the stated purpose of "beautify[ing]

11  the Town." *Town of Gilbert*, 135 S. Ct. at 2231. The statute, however, exempted numerous other

12  categories of signs, which would have had an impact on the town's aesthetics.  *Id.*  The Court held

13  that the law was "hopelessly underinclusive" because "the town cannot claim that placing strict limits

14  on temporary directional signs is necessary to beautify the Town while at the same time allowing

15  unlimited numbers of other types of signs that create the same problem." *Id.*; *see also Republican

16  Party of Minn. v. White*, 536 U.S. 765, 780 (2002) ("[A] law cannot be regarded as protecting an

17  interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves

18  appreciable damage to that supposedly vital interest unprohibited.") (internal quotation marks and

19  citation omitted).  AB 1687 is even more egregious: it silences a single speaker while leaving all

20  others free to publish the very same information that California and the bill's proponents believe

21  fosters age discrimination.  That approach cannot withstand any level of scrutiny, let alone strict

22  scrutiny.

23

24

25  ───────────────────

26  [5] When asked by the Court, the Attorney General's counsel, responsible for defending the law, could not articulate how censoring IMDb.com would prevent would-be discriminators from turning to another site.  Dkt. No. 57 at 18:14-18:18 ("THE COURT: --how does preventing one website from publishing people's age even remotely help prevent age discrimination from happening? MR. HAKL: So this is -- frankly, I think this is in the SAG-AFTRA wheelhouse . . .").  SAG-AFTRA never answered this question because it is self-evident that censoring IMDb does nothing to make the underlying information non-public.

1

**C.     AB 1687 Is Unconstitutionally Over-Inclusive**

2          To survive strict scrutiny, content-based statutes must not be over-inclusive by "regulat[ing]

3 significantly more speech than is necessary to achieve the [government's] purpose." *Comite de*

4 *Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011) (en banc).

5 Here, rather than narrowly regulating speech, AB 1687 is dramatically over-inclusive.  AB 1687's

6 author, Majority Leader Calderon, stated that the law was enacted to protect "lesser known actors

7 and actresses competing for smaller roles," because "age information for Hollywood's biggest stars

8 is readily available from other online sources."  Dkt. No. 18, Ex. 4, at 3.  But the law in fact allows

9 *all* IMDbPro subscribers to demand that IMDb remove their ages from public view.   These

10 subscribers include all manner of entertainment industry professionals, including directors,

11 producers, casting agents, and other similar people involved in hiring and casting decisions who do

12 not face a special risk of discrimination beyond that of the general public.  Moreover, the law applies

13 with equal force to well-established actors who are not "competing for smaller roles," whose ages

14 are well-known, and who do not face the same realistic or material risks of age discrimination that

15 the law claims to address.  *See Cox Broad. Corp.*, 420 U.S. at 494-95 ("[I]nterests in privacy fade

16 when the information involved already appears on the public record.").

17          Further, AB 1687 censors age information for individuals who are not even currently

18 protected by the relevant anti-age discrimination law, the Fair Employment Housing Act ("FEHA"),

19 which specifically carves out individuals younger than 40 from its protection.  *See Stevenson v.*

20 *Superior Court*, 941 P.2d 1157, 1172 (Cal. 1997) ("[A] worker must be over the age of 40 at the time

21 of the alleged discrimination to rely upon the FEHA's policy against age discrimination in

22 employment…"); Cal. Gov. Code § 12926(b) (limiting FEHA claims to "any individual who has

23 reached his or her 40th birthday").  Expanding the anti-discrimination laws to those under 40 is

24 obviously a more direct and less restrictive alternative than AB 1687's censorship of factual

25 information.  Because the state has not even tried that alternative approach, AB 1687 is patently and

26 unconstitutionally over-inclusive.

27

28

- 10 -

**IV.    Defendants' Arguments Do Not Save AB 1687**

Throughout this litigation, Defendants have invoked various arguments to elide the First Amendment and save AB 1687.  All of those arguments fail.

**A.    There Is No First Amendment "Facilitation" Exception**

Distorting the Supreme Court's decision in *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), Defendants have claimed that speech that "facilitates" illegal conduct is not protected by the First Amendment.  Dkt. No. 37 at 4-5; Dkt. No. 68 (Joint Motion for Discovery) at 6-7.  This argument has no basis in the law.  In *Pittsburgh Press*, the City of Pittsburgh enacted an ordinance "forbidding newspapers to carry 'help-wanted' advertisements in sex-designated columns except where the employer or advertiser is free to make hiring or employment referral decisions on the basis of sex." 413 U.S. at 378.  The *Pittsburgh Press* newspaper was charged with violating this ordinance by separating help-wanted advertisements by gender where the jobs "obviously do not have bona fide occupational qualifications or exceptions." *Id.* at 379.  The Court held that this statute did not violate the First Amendment because the speech at issue proposed "illegal commercial activity," *i.e.*, the hiring of employees on the basis of gender. *Id.* at 388.

Unsurprisingly, the Ninth Circuit has explained that *Pittsburgh Press*'s rationale is limited to speech which itself *proposes* illegal conduct.  *See Valle del Sol, Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013) (distinguishing *Pittsburgh Press* because in *Pittsburgh Press*, "unlike here, the affected speech proposed an illegal transaction"); *see also Airbnb, Inc. v. City & Cnty. of San Francisco*, 217 F. Supp. 3d 1066, 1079 (N.D. Cal. 2016) ("[T]he determinative question is whether the transactions proposed in the forbidden communication are themselves illegal in any way.") (quoting *Valle del Sol, Inc.*, 709 F.3d at 821) (internal quotation marks and alterations omitted).

Here, there can be no dispute that IMDb, by hosting factual biographical information, is not proposing an illegal transaction. To conclude that *Pittsburgh Press* stands for any grander principle of "facilitation" would allow the government to pick and choose sources of information to censor in fear of how others might use that information.  The Supreme Court has repeatedly rejected such a rule.  *Bartnicki*, 532 U.S. at 529-30 ("[I]t would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding

1  third party."); *Sorrell*, 564 U.S. at 577 ("Those who seek to censor or burden free expression often

2  assert that disfavored speech has adverse effects.  But the fear that people would make bad decisions

3  if given truthful information cannot justify content-based burdens on speech.").

4         **B.     IMDb Does Not Incite Discrimination**

5         Defendants have also suggested that AB 1687 may be constitutional because it restricts

6  speech which "incite[s] . . . illegal activity."  Dkt. No. 68 at 7.  Defendants cite *Brandenburg v. Ohio*,

7  395 U.S. 444 (1969), for this specious argument.  Neither *Brandenburg* nor the facts support

8  Defendants' claim.  In *Brandenburg*, a leader of the Ku Klux Klan was convicted of violating a

9  statute that criminalized the advocacy of the use of force.  *Id.* at 444-445.  The Supreme Court struck

10  the law down as unconstitutional, explaining that a law must distinguish between the "mere

11  advocacy" of a "moral necessity for a resort to force and violence," which is protected speech, and

12  the "incitement to *imminent* lawless action," which the government may constitutionally penalize.

13  *Id.* at 448, 449 (emphasis added).

14         Any suggestion that IMDb intends "incitement to imminent lawless action" is, put charitably,

15  fanciful.  The publication of basic biographical information plainly does not either advocate for

16  discrimination in the abstract, or incite concrete "imminent lawless action."  To suggest otherwise

17  means that any newspaper that publishes factual information could be censored because that factual

18  information could be used by another to discriminate or engage in other unlawful behavior.  The First

19  Amendment cannot abide such a law.  *See, e.g.*, *Sorrell*, 564 U.S. at 577.

20         **C.     AB 1687 Does Not Merely Regulate a Contractual Relationship**

21         Finally, in an attempt to transform AB 1687 into something that might pass constitutional

22  muster, Defendants have cloaked AB 1687 in a variety of less problematic.  Whether describing the

23  law as a regulation of contract or a regulation of conduct instead of a regulation on speech,

24  Defendants' arguments ignore both the text and spirit of AB 1687.  *See* Dkt. No. 29 (Brief of Attorney

25  General in Opposition to Mot. for Preliminary Injunction) at 5-8.  At its core, Defendants' position

26  rests on the incorrect premise that the law is limited to information acquired pursuant to a subscriber

27  contract.  AB 1687 contains no such limitation.

28

1    AB 1687 is *not* merely a restriction on the use of information obtained through IMDbPro's

2  contractual relationship.  Instead, it allows a subscriber to demand that IMDbPro not "publish or

3  make public the subscriber's date of birth or age information in an online profile of the subscriber,"

4  with no restriction related to the source of that age information.  *See* Cal. Civ. Code

5  § 1798.83.5(b)(1).  Once a demand is made, the law then prohibits any "companion Internet Web

6  site[]" to IMDbPro (i.e., the public IMDb.com website) from hosting that "age information."  *See id.*

7  § 1798.83.5(c).  Thus, by its operation, AB 1687 prohibits IMDb from publishing any age

8  information for those individuals, irrespective of its source, including publicly available age

9  information for a wide array of famous actors and public figures, or even where an individual openly

10 discloses his or her age.  Accordingly, while the law may encompass *some* information exchanged

11 within the subscriber relationship, it sweeps much more broadly, preventing IMDb or third parties

12 from posting age and date of birth information, regardless of its source.  This last-ditch attempt to

13 save the law falls far short.

## CONCLUSION

15    For the above reasons, IMDb respectfully requests that the Court grant IMDb's motion for

16 summary judgment and strike down AB 1687 as unconstitutional under the First Amendment.

18 Dated:  August 10, 2017                  HUESTON HENNIGAN LLP

20                                          By:   */s/ John C. Hueston*
21                                                John C. Hueston
                                                  Moez M. Kaba
22                                                Adam Olin
                                                  Attorneys for Plaintiff IMDb.com, Inc.