XAVIER BECERRA
Attorney General of California
STEPAN A. HAYTAYAN
Supervising Deputy Attorney General
ANTHONY R. HAKL
Deputy Attorney General
State Bar No. 197335
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6065
Fax: (916) 324-8835
E-mail: Anthony.Hakl@doj.ca.gov
*Attorneys for Defendant*
*Attorney General Xavier Becerra*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IMDB.COM, INC., a Delaware corporation,**<br>Plaintiff,<br>**v.**<br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California,**<br>Defendant,<br>**SCREEN ACTOR'S GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,**<br>Defendant-Intervenor. | 3:16-cv-06535<br>**DEFENDANT'S OPPOSITION/OPENING BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Date: October 26, 2017<br>Time: 10:00 a.m.<br>Dept.: No. 4 – 17th Floor<br>Judge: Honorable Vince Chhabria<br>Action Filed: November 10, 2016 |

# TABLE OF CONTENTS


**Page**

Introduction ........ 1

Background ........ 1

I. Section 1798.83.5 (AB 1687) ........ 1

II. The Parties ........ 2

III. Plaintiff's First Amendment Claim and Preliminary Injunction ........ 3

Applicable Legal Standards ........ 3

Argument ........ 4

I. Section 1798.83.5 Is a Valid Regulation of Voluntary Commercial Contracts, and Any Incidental Effect on Speech Does Not Implicate the First Amendment. ........ 4

II. Even If Section 1798.83.5 Concerns Speech, It Is a Permissible Regulation of Commercial Speech. ........ 8

Conclusion ........ 11

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied Structural Steel Co. v. Spannaus*
438 U.S. 234 (1978) .......... 7

*Anderson v. Holder*
673 F.3d 1089 (9th Cir. 2012) .......... 10

*Anderson v. Liberty Lobby*
477 U.S. 242 (1986) .......... 3

*Board of Trs. v. Fox*
492 U.S. 469 (1989) .......... 9

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .......... 3

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of New York*
447 U.S. 557 (1980) .......... 8, 9

*Cincinnati v. Discovery Network, Inc.*
507 U.S. 410 (1993) .......... 8

*City of Richmond v. J.A. Croson Co.*
488 U.S. 469 (1989) .......... 9

*Clark v. Cmty. for Creative Non–Violence*
468 U.S. 288 (1984) .......... 4

*Cohen v. Cowles Media Co.*
501 U.S. 663 (1991) .......... 4, 5, 6, 7

*Connecticut Bar Ass'n v. United States*
620 F.3d 81 (2d Cir. 2010) .......... 8

*DVD Copy Control Ass'n, Inc. v. Bunner*
31 Cal. 4th 864 (2003) .......... 7

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*
859 F.2d 610 (9th Cir. 1988) .......... 9

*Greater New Orleans Broad. Ass'n v. U.S.*
527 U.S. 173 (1999) .......... 9

*Louie v. McCormick & Schmick Restaurant Corp.*
460 F. Supp. 2d 1153 (C.D. Cal. 2006) .......... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Miracle Auto Center v. Superior Court*
68 Cal.App.4th 818 (1998)....................7

*Mut. Life Ins. Co. of New York v. Phinney*
178 U.S. 327 (1900)....................7

*Outdoor Sys. Inc. v. City of Mesa*
997 F.2d 604 (9th Cir. 1993)....................9

*Reed v. Town of Gilbert, Ariz.*
135 S. Ct. 2218 (2015)....................7

*Robi v. Five Platters, Inc.*
918 F.2d 1439 (9th Cir. 1990)....................4

*Snepp v. United States*
444 U.S. 507 (1980)....................6

*Southern California Gas Co. v. Santa Ana*
336 F.3d 885 (9th Cir. 2003)....................3, 4

*Swenson v. File*
3 Cal.3d 389 (1970)....................7

*True the Vote v. Hosemann*
43 F. Supp. 3d 693 (S.D. Miss. 2014)....................6

*U.S. Trust Co. of N.Y. v. New Jersey*
431 U.S. 1 (1977)....................7

*Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.*
860 F. Supp. 1448 (C.D. Cal. 1993)....................4

**STATUTES**

15 United States Code §§ 6501-6506....................6

18 United States Code § 2710....................6

20 United States Code 1232g....................6

47 United States Code § 551....................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Civil Code
§ 1798.83.5 ... *passim*
§ 1798.83.5(a) ... 2
§ 1798.83.5(b) ... 2, 7
§ 1798.83.5(d)(1) ... 1
§ 1798.83.5(d)(4) ... 1, 7

Communications Decency Act § 230(c)(1) ... 3

**COURT RULES**

Federal Rules of Civil Procedure
Rule 5.2(a)(2) ... 6
Rule 56(c) ... 3

Federal Rules of Evidence,
Rule 201 ... 10

**OTHER AUTHORITIES**

Joel Kane, 27 No. 3 Cal. Emp. L. Letter 1 (Nov. 7, 2016) ... 5

Eugene Volokh, *Freedom of Speech and Information Privacy: The Troubling Implications of A Right to Stop People from Speaking About You*, 52 Stan. L. Rev. 1049, 1057 (2000) ... 6

Neil M. Richards, *Reconciling Data Privacy and the First Amendment*, 52 UCLA L. Rev. 1194-96 (2005) ... 6

## INTRODUCTION

Under section 1798.83.5 of the California Civil Code,[1] Plaintiff IMDb.com, Inc. ("IMDb") is free to publish date of birth and age information as a general matter. The provision is only triggered if IMDb, as a commercial online entertainment employment service provider, voluntarily contracts with a paying subscriber for employment services *and* that subscriber requests that such information not be published. Applying only in these narrow circumstances, the provision is a contract-based nondisclosure rule and the Court should uphold it as valid regulation of voluntary commercial contracts. Any incidental effect on speech does not implicate a First Amendment right. If the First Amendment is implicated, section 1798.83.5 is a valid regulation of commercial speech. For these reasons, and as explained below, the Court should grant Defendant Attorney General Xavier Becerra's motion for summary judgment and deny IMDb's motion.

## BACKGROUND

### I. SECTION 1798.83.5 (AB 1687)

Effective January 1, 2017, AB 1687 added section 1798.83.5 to the California Civil Code. The provision governs "contractual agreements" between "commercial online entertainment employment service providers" and their paying subscribers. § 1798.83.5. As defined by the law, a "commercial online entertainment employment service provider" is "a person or business that owns, licenses, or otherwise possesses computerized information, including, but not limited to, age and date of birth information, about individuals employed in the entertainment industry, including television, films, and video games, and that makes the information available to the public or potential employers." § 1798.83.5(d)(1). A "subscriber" is "a natural person who enters into a contractual agreement with a commercial online entertainment employment service provider to receive employment services in return for a subscription payment." § 1798.83.5(d)(4).

[1] All further statutory references are to the California Civil Code unless otherwise indicated.

The express purpose of the law is "to ensure that information obtained on an Internet Web site regarding an individual's age will not be used in furtherance of employment or age discrimination." § 1798.83.5(a). To that end, the statute, provides:

> A commercial online entertainment employment service provider that enters into a contractual agreement to provide employment services to an individual for a subscription payment shall not, upon request by the subscriber, do either of the following:
>
> (1) Publish or make public the subscriber's date of birth or age information in an online profile of the subscriber.
>
> (2) Share the subscriber's date of birth or age information with any Internet Web sites for the purpose of publication.

§ 1798.83.5(b).

Under the statute, a commercial online entertainment employment service provider subject to the above requirement "shall, within five days, remove from public view in an online profile of the subscriber the subscriber's date of birth and age information on any companion Internet Web sites under its control upon specific request by the subscriber naming the Internet Web sites." § 1798.83.5(b). Any such service provider "that permits members of the public to upload or modify Internet content on its own Internet Web site or any Internet Web site under its control without prior review by that provider shall not be deemed in violation of this section unless first requested by the subscriber to remove age information." *Id*.

## II. THE PARTIES

Plaintiff IMDb operates http://www.imdb.com/ ("IMDb.com"), a publically-accessible online information database regarding films, television shows, and professionals in the entertainment industry. Compl. at 2. The information available on IMDb.com is provided by IMDb itself along with users of the site, although IMDb routinely updates and verifies information provided by users. *Id*.

IMDb also operates IMDbPro, a paid subscription service that allows industry professionals to create their own profile pages, including a résumé, for example, and to access job listings, company information, and information regarding other industry professionals. Compl. at 2-3.

Defendant Attorney General Xavier Becerra is sued in his official capacity as Attorney General of the State of California. *See* Compl. at 5 & n.1, *supra*. As the chief law officer for California, he is authorized to enforce state law, including section 1798.83.5.

Defendant-Intervenor Screen Actor's Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") is a large entertainment industry union, representing over 160,000 media professionals. *See* Doc. No. 9 at 3 (SAG-AFTRA's motion to intervene). The Court granted SAG-AFTRA's unopposed motion to intervene to defend the constitutionality of section 1798.83.5 based on the organization's involvement in the entertainment industry and its role as the sponsor of AB 1687. *See id*. & Doc. no. 38 (Order Granting Mot. to Intervene).

### III. PLAINTIFF'S FIRST AMENDMENT CLAIM AND PRELIMINARY INJUNCTION

IMDb's motion for summary judgment is limited to its claim that section 1798.83.5 is a content-based regulation of speech that violates the First Amendment because it is not narrowly drawn to serve a compelling state interest. *See* Compl. at 10-11. This is the claim upon which the Court preliminarily enjoined the operation of the statute.[2] *See* Doc. No. 54 (Order Granting Mot. for Prelim. Inj.).

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate if the record demonstrates no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The party with the burden of persuasion at trial "must establish 'beyond controversy every essential element of its . . . claim." *Southern California Gas Co. v. Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003).

[2] The second claim alleged in the complaint, but currently not at issue, is that the law violates the Commerce Clause because it is not limited "to conduct in and related to California." Compl. at 13. The third claim is that section 230(c)(1) of the Communications Decency Act preempts section 1798.83.5, which IMDb argues impermissibly imposes liability on it for content created by a third party.

At the summary judgment stage the question before the court is whether there are genuine issues for trial, or whether the matter can be decided as a matter of law. *Southern California Gas*, 336 F.3d at 887. Upon a showing that there is no genuine issue of material fact as to a particular claim, the court may grant summary judgment in the party's favor, "upon all or any part thereof." *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.*, 860 F. Supp. 1448, 1450 (C.D. Cal. 1993); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441 (9th Cir. 1990).

## ARGUMENT

### I. SECTION 1798.83.5 IS A VALID REGULATION OF VOLUNTARY COMMERCIAL CONTRACTS, AND ANY INCIDENTAL EFFECT ON SPEECH DOES NOT IMPLICATE THE FIRST AMENDMENT.

Because section 1798.83.5 regulates economic contractual relationships, not protected speech, IMDb cannot meet its burden to show that the First Amendment applies to the conduct at issue. *See, e.g., Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 n.5 (1984) ("Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies.").

The First Amendment is not a source of "limitless" protection, not even for the publication of truthful information acquired lawfully.[3] *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991). In *Cohen*, the Supreme Court held that the First Amendment did *not* prohibit a plaintiff from recovering damages, under a state promissory estoppel law, for a newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for information. *Id.* at 665. The Court reasoned, in part, that the law was one of general applicability that had "incidental effects" on the newspaper's ability to gather and report the news. *Id.* at 669. Moreover, the Court was persuaded by the fact that the agreement between the plaintiff and the newspaper was in the form of a contract. As the Court put it: "The parties themselves . . . determine the scope of their legal

[3] Defendant assumes for the purposes of this motion that the age and date of birth information published by Plaintiff is "truthful," although there is reason to believe that is not always the case. Plaintiff admits that IMDb.com contains at least some inaccuracies. *See* Compl. at 2 ("IMDb routinely and gladly updates information on IMDb.com in order to correct verified inaccuracies.").

obligations, and any restrictions that may be placed on the publication of truthful information are self-imposed." *Id*. at 671.

While section 1798.83.5 may not be a generally applicable law, the key point is that it has only "incidental effects," if any, on IMDb's ability to publish factual information. *Cohen*, 501 U.S. at 669. Section 1798.83.5 is hardly sweeping in its scope. On the contrary, it narrowly proscribes the disclosure of a discreet category of information in an online profile of the subscriber. *See* Joel Kane, 27 No. 3 Cal. Emp. L. Letter 1 (Nov. 7, 2016) ("This law has a fairly narrow scope, and it won't directly apply to the majority of employers. However, it emphasizes the importance that California places on protecting against age discrimination, including by the entertainment industry and providers of Internet services."). And the only reason the proscription extends to the publicly-accessible IMDb.com (as opposed to only IMDbPro), is a result of the decision by IMDb to effectively join its free Web publication to a fee-for-service product. Such an arrangement cannot be used to insulate IMDb from a legitimate business regulation. After all, a subscriber pays a fee to IMDbPro, effectively "hiring" the service to host his or her online profile, assist with business connections, access and facilitate employment opportunities, and so on. It is undisputed that IMDbPro allows a paying subscriber to omit any mention of date of birth or age information from his or her profile. Thus, there is a basic unfairness to allowing IMDb to turn around and publish that same information on another site it owns and controls, not to mention makes freely available, just because it happens to be outside the subscription. Section 1798.83.5 guards against that unfairness by requiring IMDb – the company that entered into a voluntary contract with a paying subscriber to provide employment services – to remove date of birth or age information across all of the sites it controls, if that is what a paying subscriber chooses to do.

In addition to narrowly proscribing a discreet category of information, section 1798.83.5 regulates the disclosure of private, sensitive information, i.e., age and birth date.[4] In a variety of

---

[4] Plaintiff tacitly concede the private nature of the information at stake. In its complaint, Plaintiff characterized date of birth or age information as "public information." Compl. ¶8. Plaintiff used the same phrase at the preliminary injunction stage. *See* Pl.'s Mot. for Prelim Inj. at 2 & 10. But Plaintiff's motion for summary judgment is conspicuously devoid of the phrase.

contexts, the law deems such information as private and not subject to disclosure. *See, e.g.*, *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736–37 (S.D. Miss. 2014) ("various courts have recognized in the context of FOIA litigation that birthdates are sensitive information and have construed FOIA's "Exemption 6" to protect the disclosure of birthdates"); Fed. R. Civ. P. 5.2(a)(2) (requiring certain age information be redacted from court filings for privacy reasons). Indeed, acceptance of IMDb's First Amendment theory here would imperil a host of similar nondisclosure laws that apply in the context of voluntary consumer transactions. *See, e.g.*, 18 U.S.C. § 2710 (limiting disclosure of personal information in video tape rental or sale records); 47 U.S.C. § 551 (regulating collection, use, and disclosure by cable operators of "personally identifiable" information regarding cable subscribers); 20 U.S.C. 1232g (concerning "release of education records (or personally identifiable information therein . . . ."); 15 U.S.C. §§ 6501-6506 (Children's Online Privacy Protection Act requirements governing disclosure of personal information). *See also* Neil M. Richards, *Reconciling Data Privacy and the First Amendment*, 52 UCLA L. Rev. 1194-96 (2005) (commercial nondisclosure or confidentiality rules generally have never been thought to fall within the scope of the First Amendment's protection). Under IMDb's theory, any company could circumvent nondisclosure laws like these if it happens to have, or starts, a separate media product line.

Next, while section 1798.83.5 subjects contracts between IMDb and its paying subscribers to a particular kind of regulation, it cannot reasonably be questioned that those contracts are voluntary. IMDb and its paying subscribers mutually agree to enter into contracts for employment services, with each side remaining free not to enter into any contract in the first place. Thus, the decision to contract is "self-imposed." *Cohen*, 501 U.S. at 671; *see* Eugene Volokh, *Freedom of Speech and Information Privacy: The Troubling Implications of A Right to Stop People from Speaking About You*, 52 Stan. L. Rev. 1049, 1057 (2000) ("[O]ne sort of limited information privacy law – contract law applied to promises not to reveal information – is eminently defensible under existing free speech doctrine. The Supreme Court explicitly held in *Cohen v. Cowles Media* that contracts not to speak are enforceable with no First Amendment problems."); *see also Snepp v. United States*, 444 U.S. 507, 510 n.1 (1980) (holding that

agreement by former government employee not to publish information about agency was enforceable because employee accepted employment and voluntarily signed agreement).[5]

To be sure, the plain language of section 1798.83.5 places it in the category of a regulation of economic contracts between private parties. In relevant part, the law applies to any commercial online entertainment service provider "*that enters into a contractual agreement* to provide employment services." §1798.83.5(b) (italics added). Similarly, it applies to any "subscriber" to those services, who the law defines as "a natural person *who enters into a contractual agreement* with a commercial online entertainment employment service provider to receive employment services in return for a subscription payment." § 1798.83.5(d)(4) (italics added). For this reason as well, IMDb has no basis upon which to complain of a First Amendment violation. *See Cohen*; 501 U.S. at 670-71; *see also DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 895 (2003) ("Both the United States Supreme Court and this court have recognized that the First Amendment right to free expression may be legitimately circumscribed by state law intellectual property rights."). Certainly, as a general matter, states have considerable leeway in regulating contracts between private parties. *See, generally, Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) ("It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public[.]"); *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22 (1977) (states have "broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result").[6]

---

[5] Related to this point, the general rule is that when parties enter into contracts, they are presumed to know and understand the applicable law, and to have drafted the provisions accordingly. *See Mut. Life Ins. Co. of New York v. Phinney*, 178 U.S. 327, 341–42 (1900); *Swenson v. File*, 3 Cal.3d 389, 393 (1970); *Miracle Auto Center v. Superior Court*, 68 Cal.App.4th 818, 821 (1998).

[6] Plaintiff's reliance on *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) is misplaced. *Reed* concerned restrictions on signs and billboards aimed at the general public. The case casts no doubt on *Cohen*, or these other commercial contract precedents.

## II. EVEN IF SECTION 1798.83.5 CONCERNS SPEECH, IT IS A PERMISSIBLE REGULATION OF COMMERCIAL SPEECH.

In the event the Court concludes that this is a First Amendment case, section 1798.83.5 concerns commercial speech. Commercial speech is an "expression related solely to the economic interests of the speaker and its audience," or, alternatively, speech "proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of New York*, 447 U.S. 557, 560 (1980). The Supreme Court has recognized that this definition is hardly precise and it is often difficult to distinguish between commercial and noncommercial speech. *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993) (recognizing difficulty of "drawing bright lines that will clearly cabin commercial speech in a distinct category").

IMDb has argued that this case concerns speech unconnected to a business transaction. On the contrary, by its terms the statute regulates speech only in the context of contractual agreements between entities like IMDb and its paying subscribers. Additionally, because such contracts concern the provision of *employment* services by businesses like IMDb, and the receipt of such services by paying subscribers, any speech in connection with those contracts concerns the economic interests of the parties to those transactions. Thus, if section 1798.83.5 regulates speech at all, it regulates commercial speech. *See, generally*, *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 94 (2d Cir. 2010) (concluding that "the contract requirements of [a federal statute] qualify as commercial speech").

Accordingly, the strict scrutiny urged by IMDb does not apply. Rather, the less-than-strict review under *Central Hudson* applies. In *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980), the Supreme Court set out the four-part First Amendment test applicable to a statute regulating commercial speech. As the Court explained:

> At the outset, we must determine [1] whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566.

Here, the first and second parts of the *Central Hudson* test are not at issue. Based on the current record, it does not appear that the relevant date of birth or age information is either misleading or related to unlawful activity as a general matter. Nor is there any dispute that combatting age discrimination in employment is a substantial and compelling state interest. *See*, *e.g.*, *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 536 (1989) (remedying past discrimination is compelling interest); *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 620-621 (9th Cir. 1988) (same). Thus, any *Central Hudson* analysis turns on the third and fourth parts of the applicable test.

With regard to the third part, that the regulation directly advances the government's interests, California is required to point to something more than "mere speculation or conjecture" to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Greater New Orleans Broad. Ass'n v. U.S.*, 527 U.S. 173, 188 (1999) (citation omitted). Related, the fourth part of the test asks whether the speech restriction is more extensive than necessary to serve the interests that support it. *Id*. This element does not require that California adopt the least restrictive means for achieving its objectives. *Board of Trs. v. Fox*, 492 U.S. 469, 480, (1989); *Outdoor Sys. Inc. v. City of Mesa*, 997 F.2d 604, 610 (9th Cir. 1993). Rather, there need only be a "reasonable fit" between the government's ends and the means chosen to accomplish those ends. *Fox*, 492 U.S. at 480; *see Greater New Orleans Broad. Ass'n*, 527 U.S. at 188 (requiring "a fit that is not necessarily perfect, but reasonable").

The Legislature passed AB 1687 to address age discrimination in the entertainment industry, which "remains a problem" despite the state's civil rights laws. Sen. Rules Com., Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) Aug. 3, 2016, at 3; *see* Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) June 14, 2016, at 1 (despite laws like Fair Employment and Housing Act and Unruh Civil Rights "age discrimination remains a problem in the entertainment industry"); Assem. Com. on Privacy & Consumer Protection, Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) May 3, 2016, at 2 ("age discrimination

continues to exist and is facilitated through public distribution of potential job applicant's birth and age information via commercial online employment service providers").[7]

Thus, IMDb's argument that the State simply needs to enforce its current age discrimination laws falls short. The Legislature determined that, in this particular industry, those laws have proven insufficient to eliminate discrimination. As a further remedial measure, AB 1687 was designed to limit the availability of age information of entertainment industry professionals. As the author of the bill observed, "[i]n particular, actors are often cast in roles in which they portray characters who are younger or older than their real biological age. . . . As actors age, they are very concerned that they will be shut out from parts based on unlawful age bias." Sen. Rules Com., Analysis of Assem. Bill No. 1687 (2015-2016 Reg. Sess.) Aug. 3, 2016, at 4.

The restriction also is no more extensive than necessary. It only applies to commercial online entertainment employment service providers and subscribers who enter into contractual agreements for employment services. Thus, if the law regulates speech, at most it comes into play in the context where the remedy is needed, paid employment services specific to the entertainment industry. Third parties to the contractual agreements (i.e., those outside of the voluntary, mutually beneficial agreements like those between IMDb and its paying subscribers) are not covered by the law. The provisions also limit access to age information only, a limited category of information.

The text of section 1798.83.5 and its legislative history show that the Legislature understood the problem of age discrimination in the entertainment industry to be real, adopted the provision to aid in solving that problem, and matched the restriction to the problem to be addressed. Thus, if section 1798.83.5 is to be considered a speech regulation, it is a valid commercial speech regulation.

[7] This legislative history is attached to the declaration of the undersigned filed in support of this brief. Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the legislative history of state statutes. *Anderson v. Holder*, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012); *Louie v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155, n.4 (C.D. Cal. 2006). Defendant respectfully requests that this Court take judicial notice of the relevant legislative history here.

**CONCLUSION**

For the reasons set forth above, the Court should grant the Attorney General's motion for summary judgment and deny IMDb's motion.

Dated: August 24, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
STEPAN A. HAYTAYAN
Supervising Deputy Attorney General

*/s/ Anthony R. Hakl*
ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant*

SA2016104639
12793704.doc

# CERTIFICATE OF SERVICE

Case Name: **IMDb.com, Inc. v. Xavier Becerra** No. **3:16-cv-06535**

I hereby certify that on August 24, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S OPPOSITION/OPENING BRIEF ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 24, 2017, at Sacramento, California.

| Tracie L. Campbell | */s/ Tracie Campbell* |
|---|---|
| Declarant | Signature |

SA2016104639
12795364.doc