1  DOUGLAS E. MIRELL (Bar No. 94169)
   dmirell@hmafirm.com
2  DILAN A. ESPER (Bar No. 178293)
   desper@hmafirm.com
3  HARDER MIRELL & ABRAMS LLP
   132 S. Rodeo Dr., Fourth Floor
4  Beverly Hills, CA  90212
   Tel.  (424) 203-1600
5  Fax  (424) 203-1601

6  Attorneys for Defendant/Intervenor
   Screen Actors Guild-American Federation
7  of Television and Radio Artists

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMDB.COM, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>XAVIER BECERRA, et al.<br><br>        Defendants.<br><br>SCREEN ACTORS GUILD - AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS,<br><br>        Defendant/Intervenor. | No. 3:16-cv-06535-VC<br><br>**OPPOSITION OF DEFENDANT/INTERVENOR SAG-AFTRA TO MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:   Hon. Vince Chhabria<br>Date:    October 26, 2017<br>Time:    10:00 A.M.<br>Place:   Courtroom 4, 17th Floor<br>          450 Golden Gate Ave.<br>          San Francisco, CA  94102 |

{00083702;8}

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND ................................................................................2

III. AB 1687 RESTRICTS EXPRESSION THAT FACILITATES ILLEGAL AGE DISCRIMINATION, AND IS CONSTITUTIONAL. .................................................................................................2

IV. SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE DEFENDANTS HAVE BEEN DENIED NECESSARY DISCOVERY. ......................................................................................................8

V. CONCLUSION ...................................................................................................11

{00083702;8}

# TABLE OF AUTHORITIES

**Cases**

*Airbnb Inc. v. City and County of San Francisco*, 217 F.Supp.3d 1066
 (N.D. Cal. 2016) ........................................................................................................ 5

*Bamboo Bros. v. Carpenter*, 133 Cal.App.3d 116 (1982) .......................................... 7

*Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161 (7th Cir. 1974) ....................... 4, 8

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ............................................................. 7, 8

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ............................................................... 7

*Broadrick v. Oklahoma*, 413 U.S. 601(1973) .......................................................... 10

*Fenwick-Schafer v. Sterling Homes Corp.*, 774 F.Supp. 361 (D.Md.
 1991) ......................................................................................................................... 5

*Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d
 1213 (11th Cir. 1982) ................................................................................................ 6

*Goldin v. Public Utilities Commission*, 23 Cal.3d 638 (1979) .................................. 6

*Guider v. Bauer*, 865 F. Supp. 492 (N.D. Ill. 1994) .................................................. 5

*Judge v. Saltz Plastic Surgery, P.C.*, 367 P.3d 1006 (Utah 2016) ............................. 8

*Murphy v. Matheson*, 742 F.2d 564 (10th Cir. 1984) ................................................ 6

*Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*,
 413 U.S. 376 (1973) .......................................................................................... passim

*Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir.) ........................................... 5, 8

*Shulman v. Group W. Productions, Inc.*, 18 Cal.4th  200 P.2d 469(1998) ............... 8

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ....................................................... 7

*Town Tobacconist v. Kimmelman*, 453 A.2d 209,(N.J. Super. 1982) ....................... 7

*Valle del Sol, Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013) ..................................... 7

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) ........................... 6, 7, 8

**Statutes**

AB 1687 ............................................................................................................. passim

**Other Authorities**

*California Practice Guide:  Federal Civil Procedure Before Trial* § 14:114 (The Rutter Group 2017) .................................................................. 9

http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3659&meta_id=131725 ; ................................................................................. 3

http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3862&meta_id=150591 ...................................................................................... 3

http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3940&meta_id=162498 ...................................................................................... 3

http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3958&meta_id=169805 ...................................................................................... 3

http://deadline.com/2010/01/huge-70m-settlement-in-tv-writers-age-discrimination-lawsuit-23180/ ...................................................................... 10

**Rules**

Fed R. Civ. Proc. 56(d) ............................................................................................ 9

{00083702;8}

## I. INTRODUCTION

Plaintiff's motion for summary judgment incorrectly asserts that there are no factual issues here – that it does not matter how prevalent age discrimination is in the entertainment industry; that it does not matter how much the dissemination of the ages of entertainment industry workers on Plaintiff's website facilitates age discrimination; and that it does not even matter if this commercial speech regulation would substantially reduce such age discrimination. Plaintiff contends it has an absolute First Amendment right to disseminate the ages of everyone in Hollywood, consequences be damned, and no matter how much or little value such expression has in the marketplace of ideas.

Defendant-Intervenor Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA") continues to contend that this is not the law. First, it matters that AB 1687 directly addresses an issue – age discrimination – that even Plaintiff concedes is of compelling importance.[1] Second, it matters that AB 1687 targets the entertainment industry's go-to website for investigating the backgrounds of those seeking employment, IMDb.com. Third, it matters that AB 1687, if enforced, will make it more difficult for entertainment industry employers to quickly factor age into account when making their hiring decisions. Fourth, it matters that the expression at issue, if protected at all, is personal information that receives limited First Amendment protection – the birthdate of a private citizen is not political expression, art, or news.

While Plaintiff argues that the statute at issue infringes upon a core constitutional right to comment on the entertainment industry and report news about celebrities, it is in fact nothing of the sort. For one thing, many of the people who are protected by the statute are either minor celebrities or have little or no fame whatsoever. Moreover, nothing in the statute prevents anyone from debating the

---

[1] *See* Dkt. 78 at 2 ("IMDb does not dispute that age discrimination should be rooted out in the entertainment industry and beyond").

- 1 -

{00083702;8}

issue of age discrimination, discussing the lives of celebrities, or engaging in similar expression. Plaintiff's website publishes everyone's age regardless of whether it is relevant to any public issue at all, and does so without any comment or context. This is not an invitation to public debate. Rather, it is an open invitation for casting directors to engage in illegally discriminatory conduct, as set forth in the Declaration of Marilyn Szatmary, an experienced talent agent who describes precisely the effect of IMDb.com on the entertainment industry. The effect of AB 1687 on constitutionally protected speech regarding famous people is incidental and can be addressed, if necessary, in an as-applied challenge.

## II.  FACTUAL BACKGROUND

Plaintiff successfully opposed all proposed discovery in this case. Without such discovery, SAG-AFTRA was unable to develop the necessary factual record in this case. However, SAG-AFTRA believes that discovery would show the following: (1) that age discrimination is rampant within the entertainment industry; (2) that Plaintiff's website IMDb.com is the "go-to" website for casting information in the industry; (3) that removal of age information from IMDb.com would make age discrimination more difficult by removing the most ready and reliable source of such information; and (4) many of the persons whose age information is posted on IMDb.com are not famous or the subject of public discussion. These facts are also set forth in the Declaration of Marilyn Szatmary, who worked for decades as a talent agent as well as having experience as a casting director, and which is filed concurrently herewith.

## III.  AB 1687 RESTRICTS EXPRESSION THAT FACILITATES ILLEGAL AGE DISCRIMINATION, AND IS CONSTITUTIONAL.

AB 1687 is the latest in a long line of anti-discrimination laws which

- 2 -

recognize that barring discriminatory conduct is insufficient by itself to prevent discrimination.[2] It is often necessary to regulate solicitations that facilitate discriminatory conduct in order to effectively combat discrimination. Such laws are fully constitutional under the longstanding principle that speech which directly facilitates illegal transactions or conduct is unprotected by the First Amendment.

The leading case is *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973). In *Pittsburgh Press*, the city's Human Relations Commission barred the newspaper from publishing separate male and female want ads. The U.S. Supreme Court upheld the Commission's order. "Discrimination in employment is not only commercial activity, it is illegal commercial activity under the Ordinance." *Id*. at 388.

> The Commission and the courts below concluded that the practice of placing want ads for nonexempt employment in sex-designated columns did indeed "aid" employers to indicate illegal sex preferences. The advertisements, as embroidered by their placement, signaled that the advertisers were likely to show an illegal sex preference in their hiring decisions. Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.
>
> *Id.* at 389.

Thus, *Pittsburgh Press* stands for the proposition that not only may a government bar discriminatory conduct, but may also prohibit certain expression in order to make the anti-discrimination law effective – specifically, solicitations that

---

[2] AB 1687 received committee hearings in both the State Assembly and State Senate, as well as floor debate in both chambers, during which the need to importance of combatting age discrimination in the entertainment industry was discussed and acknowledged. *See* http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3659&meta_id=131725 ; http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3862&meta_id=150591 ; http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3940&meta_id=162498 ; and http://calchannel.granicus.com/MediaPlayer.php?view_id=&clip_id=3958&meta_id=169805 . There is no doubt that this was the intention of the statute.

facilitate discriminatory conduct.

Importantly, ***Pittsburgh Press* is not limited to explicit acts of discrimination, as Plaintiff has argued throughout this case**.  Rather, the principle underlying *Pittsburgh Press* applies to restrictions on categories of expression that are not themselves facially discriminatory, but which can foreseeably be used to *facilitate* such discrimination.  *Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161 (7th Cir. 1974), demonstrates this.  In *Barrick Realty*, the city enacted an ordinance barring all "For Sale" signs on residential property in an attempt to prevent panic selling that could lead to resegregation.  Despite the fact that the ordinance barred clearly truthful speech (after all, such homes were indeed for sale) and despite the fact that the speech was not explicitly discriminatory (unlike the segregated want ads in *Pittsburgh Press*), the ordinance was upheld because it was directed toward expression that facilitated discrimination:

> The history of the ordinance banning "For Sale" signs shows that it was aimed at panic selling and that its purpose was to halt resegregation. It was passed in response to the presence of numerous "For Sale" signs in some white neighborhoods, which caused whites to move *en masse* and blacks to replace them. There is evidence in the record that some real estate brokers who placed these signs (not including any plaintiffs) actively encouraged resegregation by unlawfully urging whites to sell quickly before they had black neighbors and lower property values.
> *Id.* at 163-64.

Thus, Plaintiff's assertions that AB 1687 regulates truthful communications and that some disclosures of particular persons' ages will not result in discrimination miss the mark.  The "for sale" signs in *Barrick Realty* were truthful, and it is entirely possible that some of the home sales at issue were non-discriminatory and would not have changed the racial makeup of the neighborhood.  Nonetheless, the statute barring all "for sale" signs was upheld.  So long as the communication of the age of persons in the entertainment industry writ large facilitates illegal age discrimination – a factual issue that can only be resolved by the kind of discovery that this Court has wholly precluded – such expression may be regulated consistent with the First

- 4 -

Amendment even though specific communications might not be discriminatory.

In *Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir.), *cert denied*, 502 U.S. 821 (1991), the Court held that the First Amendment permitted the federal government, through the Fair Housing Act, to bar housing advertisements featuring white models for homes in segregated white neighborhoods and black models for homes in black neighborhoods. "The complaint alleges that the ads in question discourage black people from pursuing housing opportunities by conveying a racial message in much the same way that the sex-designated columns in *Pittsburgh Press* furthered illegal employment discrimination. The Times's publication of real estate advertisements that indicate a racial preference is, therefore, not protected commercial speech." *Id.* at 1003.

Once again, the expression in *Ragin* was not in any way untruthful or misleading. Nor would all the home sales resulting from the advertisements in *Ragin* necessarily be discriminatory. Nothing in the advertisements prevented a home modeled by a black model to be sold to a white family or vice-versa. The regulation prohibited what would in another context be protected artistic expression – an advertiser's choice of which models would be most effective to sell a house. Nonetheless, the fact that the advertisements would *facilitate* acts of discrimination was sufficient to permit the government to ban it. *Accord Fenwick-Schafer v. Sterling Homes Corp.*, 774 F.Supp. 361, 364 (D.Md. 1991) (following *Ragin*); *Guider v. Bauer*, 865 F. Supp. 492, 497 (N.D. Ill. 1994) (federal government may constitutionally bar advertisement that housing unit was "perfect for single or couple" even if the statement is truthful).

More recently, the *Pittsburgh Press* rule has been applied to the online bed and breakfast service Airbnb.com. In *Airbnb Inc. v. City and County of San Francisco*, 217 F.Supp.3d 1066 (N.D. Cal. 2016), the Court held that the City could constitutionally ban Airbnb from accepting any fee from an advertiser of an unregistered rental property, because such advertisements facilitate illegal rentals.

{00083702;8}

1  *Id.* at 1078-79. In doing so, the Court specifically rejected Airbnb's argument that
2  *Pittsburgh Press* only applied if the advertisement on its face was unlawful. *Id.*
3      *Pittsburgh Press* has been applied in a wide array of factual circumstances.
4  For instance, in *Goldin v. Public Utilities Commission*, 23 Cal.3d 638 (1979) the
5  California Supreme Court upheld a rule requiring that telephone utilities deny service
6  to persons who utilize the telephone for illegal purposes. Goldin involved an illegal
7  escort service that utilized numerous telephone numbers to facilitate the business and
8  to provide prostitutes for its clients. The Court recognized that "when such
9  communication proposes, discusses, or is intended to encourage or facilitate a
10  commercial transaction *which is itself illegal*, the principle established in the
11  *Pittsburgh Press* case is applicable." *Id.* at 657 (emphasis in original).
12      A line of cases involving head shops, which sell drug paraphernalia (such as
13  bong pipes), also confirms the applicability of the *Pittsburgh Press* principle. In
14  *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) the U.S. Supreme Court
15  upheld the constitutionality of a statute that prohibited the sale of certain drug
16  paraphernalia with or within close proximity to literature encouraging the use of
17  illegal drugs. The Court accepted that the statute prohibited the communication of
18  information promoting or encouraging drug use, but stated "[i]f that activity is
19  deemed 'speech,' then it is speech proposing an illegal transaction, which a
20  government may regulate or ban entirely" under *Pittsburgh Press*. *Id.* at 496.
21      Pursuant to *Pittsburgh Press* and *Hoffman Estates*, a number of head shop
22  laws that restrict various forms of expression have been upheld on the grounds that
23  such expression facilitates illegal conduct. *Murphy v. Matheson*, 742 F.2d 564(10th
24  Cir. 1984) (advertisements of head shop "are not constitutionally protected in this
25  instance because the statute is directed at commercial activity promoting or
26  encouraging illegal drug use"); *Florida Businessmen for Free Enterprise v. City of
27  Hollywood*, 673 F.2d 1213,(11th Cir. 1982) ("[T]he government may regulate or ban
28  entirely commercial speech related to illegal activity"); *Town Tobacconist v.*

- 6 -

{00083702;8}

*Kimmelman*, 453 A.2d 209 (N.J. Super. 1982) ("The statute is thus directed only to advertisements which are known to have the purpose of aiding and promoting violations of the Controlled Dangerous Substances Act"); *Bamboo Bros. v. Carpenter*, 133 Cal.App.3d 116,(1982) ("If the advertisement, as in the instant case, is encouraging an illegal activity, the principle established by Pittsburgh Press is applicable").

AB 1687 does nothing more than what numerous other statutes have done in the past – *i.e.*, restrict communication that facilitates discrimination. Moreover, it does so in the context of an industry that has engaged in extensive age discrimination which has persisted despite enforcement efforts – another fact that would have been established by the discovery that this Court entirely precluded. Thus, AB 1687 is consistent with the First Amendment.

Plaintiff cites *Valle del Sol, Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013), for the proposition that *Pittsburgh Press* applies solely to advertisements that are themselves illegal. However, *Whiting*'s dictum – that speech may not be regulated because it is "related" to an illegal transaction – cannot be given a broad reading; doing so would be inconsistent with the U.S. Supreme Court's holding in *Hoffman Estates*, which permitted exactly that in upholding a ban on advocacy of narcotics use (ordinarily protected by the First Amendment, at least where it did not meet the strict scrutiny given to incitement laws under *Brandenburg v. Ohio*, 395 U.S. 444 (1969)) where the speech occurred in close proximity to the sale of drug paraphernalia, because this related the speech to illegal conduct. Plaintiff's citation of unrelated cases from different contexts where the Supreme Court declined to permit speech regulations is not relevant; nothing in any of those cases remotely suggests that either *Pittsburgh Press* or *Hoffman Estates* are no longer good law. *See Bartnicki v. Vopper*, 532 U.S. 514,(2001) (plurality opinion); *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011).

As set forth in the Declaration of Marilyn Szatmary filed concurrently

herewith, there is massive age discrimination in the entertainment industry and IMDb.com facilitates that discrimination as the go-to website for casting decisions. Further, AB 1687 clearly can constitutionally be applied to the many people in the industry who are not famous and whose birthdates are not a matter of public discussion or concern, and who are threatened with age discrimination as a result of Plaintiff's activities.  There are clearly genuine issues of material fact, which must be resolved at trial.

## IV. SUMMARY JUDGMENT IS INAPPROPRIATE BECAUSE DEFENDANTS HAVE BEEN DENIED NECESSARY DISCOVERY.

Under governing case law in this constitutional arena, it is clear that facts matter.  The *Pittsburgh Press* line of cases uphold restrictions on expression that, under different facts, could be struck down as unconstitutional.  The ban on "for sale" signs in *Barrick Realty*, the restrictions on the artistic choices of advertising agencies in *Ragin* and the restrictions on the advocacy of narcotics use in *Hoffman Estates* are all regulations that could be struck down if the factual predicate of a relationship between the expression and the discriminatory or illegal conduct it facilitated were not established.

SAG-AFTRA attempted to establish that factual predicate in this action through discovery that sought to establish: (1) the severity and pervasiveness of age discrimination in the entertainment industry; (2) the role of IMDb.com in facilitating such discrimination and its role in casting decisions; and (3) the extent to which the persons protected by AB 1687 are famous people whose birthdates might be the subject of legitimate public discussion.[3]  The first two categories concern

---

[3] Plaintiff's arguments are premised on the notion that birthdates are protected expression. The test for whether states may extend privacy protection to the disclosure of private facts is whether the facts are a "matter of legitimate public concern".  *See, e.g., Shulman v. Group W. Productions, Inc.*, 18 Cal.4th 200, 955 P.2d 469(1998); *Judge v. Saltz Plastic Surgery, P.C.*, 367 P.3d 1006, (Utah 2016); *see Bartnicki v. Vopper*, 532 U.S. 514, 525 (2001) (plurality) (limiting First Amendment protection of publicly disclosed private facts to information that is a matter of public concern; the concurring and dissenting opinions sought an even narrower First Amendment test).  As amicus

- 8 -

{00083702;8}

information relevant to whether the case law concerning facilitation of discrimination apply to the statute.  The last of these three categories concerns evidence to rebut Plaintiff's argument that AB 1687 sweeps within its scope a substantial amount of protected expression concerning the discussion of celebrities' ages and personal lives.

All of SAG-AFTRA's and the Attorney General's proposed discovery was rejected by this Court.  Under Fed. R. Civ. Proc. 56(d), it is not appropriate to grant summary judgment when essential discovery necessary to oppose the motion was prevented.

Additionally, the Declaration of Marilyn Szatmary, a talent agent and casting director with decades of experience, establishes genuine issues of fact as to all these issues.

To obtain relief under Rule 56(d) , SAG-AFTRA must show four things:  (1) facts indicating a likelihood that controverting evidence exists; (2) specific reasons why such evidence was not discovered earlier; (3) the steps or procedures that the party proposes to obtain the evidence in a reasonable time; and (4) an explanation of how these facts will suffice to defeat summary judgment. Beverly Reid O'Connell & Karen L. Stevenson, *California Practice Guide:  Federal Civil Procedure Before Trial* § 14:114 (The Rutter Group 2017

Here, there is a likelihood that SAG-AFTRA will be able to establish that evidence in each of these categories exists – that age discrimination is pervasive, that IMDb.com facilitates it as the "go to" entertainment industry site, and that AB 1687

---

AARP noted in its brief in opposition to Plaintiff's preliminary injunction motion, birthdates are subject to extensive privacy protections under existing statutes and are generally not treated as public information. Dkt. 35 at 7-8.  While the public discussion of a famous celebrity's age is likely a matter of public concern, there is no reason that the various statutes discussed in the AARP brief that prohibit the dissemination of the birthdates of non-famous people who are not the subjects of public fascination would be constitutionally suspect.  If Plaintiff's position were taken to its logical conclusion, the public disclosure of personally identifying information of ordinary, non-famous people is completely protected by the First Amendment, and the government may not restrict this.  That would completely compromise privacy laws that protect people's personal identifying information, and there is no justification for recognizing such a right.

- 9 -

{00083702;8}

applies to the birthdates of numerous non-celebrities whose personal information is not subject to public discussion and interest.  This discovery was obviously not conducted due exclusively to this Court's ruling prohibiting all discovery.  SAG-AFTRA and the Attorney General proposed specific steps and procedures to obtain such discovery in their joint request to conduct limited discovery (Dkt. 68) which this Court denied (Dkt. 73).  Finally, under the case law relied upon by SAG-AFTRA, a showing of the pervasiveness of age discrimination, and the relationship/role that IMDb.com has and plays in its facilitation, can defeat summary judgment.  Similarly, a showing that AB 1687 applies mostly to unprotected speech that does not relate to famous people defeats Plaintiff's arguments even if they are correct that *Pittsburgh Press* is inapplicable and the statute is subject to strict scrutiny.  *See Broadrick v. Oklahoma*, 413 U.S. 601(1973) (statute must be "substantial[ly]" overbroad in relation to the statute's legitimate scope to be struck down on a facial challenge).

      Indeed, even Plaintiff's moving papers rely upon factual claims that have never been subject to discovery.  For instance, Plaintiff speculates that AB 1687 applies to numerous people (such as producers, directors, casting agents, etc.) who face no serious threat of age discrimination. Dkt. 78 at 1, 10.  This, of course, is pure conjecture in the absence of discovery to develop the facts.  Plaintiff could have taken discovery to establish that these groups of people do not face a serious threat of age discrimination, but instead Plaintiff opposed all discovery.[4]

      Because this motion can only be determined after discovery, which SAG-AFTRA has not been permitted to take, it should be denied.

---

[4] It is worth noting that Plaintiff's implication that only actors face age discrimination in the entertainment industry is inconsistent with reports that, for instance, writers also face such discrimination.  A group of writers received a $70 million settlement based on a claim of age discrimination. Nikki Finke, "Huge $70M Settlement In TV Writers Age Discrimination Lawsuit: CAA Lone Holdout," *Deadline: Hollywood* (Jan. 22, 2010), (at http://deadline.com/2010/01/huge-70m-settlement-in-tv-writers-age-discrimination-lawsuit-23180/ ). Once again, discovery would be necessary to sort out whether there really are categories of individuals listed on IMDb.com who do.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

DATED: August 25, 2017.  DOUGLAS E. MIRELL
DILAN A. ESPER
HARDER MIRELL & ABRAMS LLP

*/s/ Douglas E. Mirell*
By _____
Douglas E. Mirell
Attorneys for Defendant/Intervenor
Screen Actors Guild-American
Federation of Television and
Radio Artists

- 11 -

{00083702;8}